Dhoruba Bin **WAHAD**, formerly Richard Dhoruba Moore, Plaintiff,

v.

**FEDERAL BUREAU OF INVESTIGATION, et al.,** Defendants.

No. 75 CIV. 6203 (MJL).

United States District Court, S.D. New York.

Aug. 20, 1990.

Robert J. Boyle, Elizabeth M. Fink, Brooklyn, N.Y., for plaintiff.

Otto Obermaier, U.S. Atty., S.D.N.Y. by Richard M. Schwartz, New York City, for Federal defendants.

Victor A. Kovner, New York City Corp. Counsel by Robert J. Trachtenberg, Beth G. Schwartz, New York City, for Mun. defendants.

## OPINION AND ORDER

LOWE, District Judge.

The above-captioned action has been on this Court's docket as long as any case currently before us. Magistrate Nina Gershon has been supervising this matter during its long and tortuous pre-trial stage. A number of her rulings have been appealed to this Court pursuant to Rule 72 of the Federal Rules of Civil Procedure. We now review all of the Magistrate's rulings which have been appealed by the parties.

## BACKGROUND

This action was instituted in December, 1975 alleging illegal surveillance of, and initiation of false criminal charges against plaintiff by named and unnamed present and former federal and municipal officials in violation of rights protected by the United States Constitution and various federal statutes.

Plaintiff filed an amended complaint on September 10, 1976 which alleges that plaintiff was the target of the FBI COINTELPRO program and that the federal and municipal defendants subjected him to illegal electronic and physical surveillance.

On December 16, 1982, plaintiff moved for leave to file a second amended complaint. He sought to assert a claim for damages against thirteen current and former FBI agents who allegedly participated in investigations of plaintiff; the United States under the Federal Torts Claim Act, 28 U.S.C. § 2671; the FBI; William French–Smith and William Webster, who at the time plaintiff filed his motion for leave to amend, were respectively the Director of the FBI and the United States Attorney General; three municipal defendants, all current or former employees of the New York City Police Department ("NYCPD") who are alleged to have participated in that department's activities against plaintiff; Peter Preiser and Benjamin Ward, both former commissioners of the New York State Department of Correctional Services (NYSDCS); and John Keenan, former Deputy Superintendent in charge of Security at the Green Haven Correctional Facility.

Plaintiff also sought to add claims that the defendants' activities violated the Privileges and Immunities Clause of the Constitution and rules and regulations of the Justice Department, FBI and United States Post Office. Various pendent claims under New York law also were proposed. Lastly, the proposed second amended complaint contained new factual allegations concerning the allegedly unlawful conduct engaged in by the current and proposed defendants.

Magistrate Gershon, on July 15, 1986, issued an order granting in part and denying in part plaintiff's request for leave to amend his complaint. Plaintiff filed objections to this Order pursuant to Fed.R. Civ.P. 72 appealing only those portions of the Magistrate's ruling denying his motion to add two of the proposed federal defendants, James L. Lott and John Francis Higgins; one of the proposed municipal defendants, NYCPD Detective Edwin Cooper, and the factual allegations concerning plaintiff's criminal trial.

On March 10, 1987, the Magistrate refused to reconsider her earlier order of January 16, 1987 upholding the procedure utilized by the municipal defendants in asserting a qualified privilege over approximately fifty thousand documents. Plaintiff filed objections to this ruling.

On June 22, 1988, Magistrate Gershon dismissed plaintiffs claims against defendants Robert Mardian and Clarence Kelley, former Assistant Attorney General in charge of the Internal Security Division of the Department of Justice and former Director of the FBI, respectively, for lack of personal jurisdiction. Plaintiff filed objections to this order.

Lastly, on June 26, 1990, Magistrate Gershon denied defendant FBI's request for an order which would modify her earlier order which denied the FBI's application to keep confidential the name of the person who had supplied the FBI with plaintiff's address book. 131 F.R.D. 60. It is undisputed that the address book was taken from plaintiff's prison cell, copied and then returned to the cell, in plaintiff's absence. The federal defendants filed objections to this ruling.

We now consider the appeals from these four rulings of the Magistrate.

## DISCUSSION

█ Once a pretrial matter is referred to a magistrate and an appeal is taken from a ruling by that magistrate, the subject matter of that ruling is to be categorized under Fed.R.Civ.P. 72 as either "dispositive" or "nondispositive" for purposes of the standard of review to be exercised by the district judge. If the motion at issue is nondispositive then a district court is to disturb the magistrate's order only if it is shown that the ruling is "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). If, on the other hand, the motion ruled upon is found to be dispositive, then the district court is to conduct a *de novo* review of that decision. Fed.R.Civ.P. 72(b).[1]

*Motion to Amend*

In an earlier ruling refusing plaintiff's request to reconsider our order rejecting plaintiff's request to file objections to the Magistrate's order denying his motion to amend his complaint so to not interrupt the course of the litigation, we discussed why a motion for leave to amend is considered nondispositive. *See* January 27, 1987 Order at 4–6.[2] Accordingly, the issue before us now is whether the Magistrate's ruling denying plaintiff leave to file an amended complaint is clearly erroneous.

The statute of limitation period governing plaintiff's claims against the FBI defendants, *see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and his claims under 42 U.S.C. § 1983 against the proposed state and municipal defendants is three years. In

*Okure v. Owens*, 816 F.2d 45, 49 (2d Cir. 1987), the Second Circuit held that New York State's three-year residual statute of limitations for personal injury claims not embraced by specific statutes of limitations was applicable to § 1983 actions. The Supreme Court affirmed that decision holding that in all instances where state law provides multiple statutes of limitations for personal injury actions—as is the case in New York, *see* C.P.L.R. § 214(5) (three years) and C.P.L.R. § 215(3) (one year for intentional torts)—the state's general or residual personal injury statute of limitations should apply to § 1983 claims. *Okure v. Owens*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). As a result, there is now no dispute that New York state law provides a three year statute of limitations for § 1983 actions.

The Magistrate denied, on statute of limitations grounds, plaintiff's motion to add thirteen current and former FBI agents and six present and former officials of the NYCPD who allegedly participated in the investigations of plaintiff as defendants, as well as certain factual allegations. Plaintiff appeals only those portions of the Magistrate's order denying his motion to add two of the proposed federal defendants, James L. Lott and John Francis Higgins; one of the proposed municipal defendants, NYCPD Detective Edwin Cooper; and the factual allegations concerning plaintiff's criminal trial. Plaintiff seeks reversal of the Magistrate's determination on the grounds that the statute of limitations should be equitably tolled until July, 1980 or, alternatively, that plaintiff's claims against the proposed defendants relate back under Rule 15(c) of the Federal Rules of Civil Procedure.

1. Fed.R.Civ.P. 72 provides that any party may serve and file written objections to the proposed findings and recommendations of the magistrate as provided by the rules of the court. As to the final appeal taken, however, concerning the federal defendants' invocation of informant privilege, the parties have agreed not to submit any additional briefings on this matter. This Court will therefore resolve this issue based on the voluminous papers already submitted.

2. In that ruling we noted that plaintiff "does not seem to allege error on the part of the magistrate [but rather] complains largely of 'unprecedented' delays since the inception of this case." *See* January 27, 1987 Opinion at 6. Plaintiff has since corrected this Court's misconception that he was not alleging that the Magistrate's ruling was incorrect as a matter of law. *See* Plaintiff's May 26, 1987 Letter to this Court. Accordingly, we now consider whether in fact the Magistrate's ruling was either clearly erroneous or contrary to law.

### 1. James L. Lott and John Higgins

█ Under the equitable doctrine introduced in *Fitzgerald v. Seamans*, 553 F.2d 220, 229 & 229 n. 16 (D.C.Cir.1977), so long as a plaintiff has sued upon his underlying claim within the limitations period, he may add new defendants whose identities are unearthed during the discovery process "subject to the requirement of due diligence." *Id. See also Hobson v. Wilson*, 737 F.2d 1, 33–34 (D.C.Cir.), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Even though plaintiff did not discover Lott and Higgins' participation in the challenged activities until after July, 1980 when the federal defendants produced certain documents pursuant to an order by this Court[3], the Magistrate denied equitable relief because plaintiff did not move to amend his complaint until December 16, 1982 and "offer[ed] no reason for the delay." Order at 16.

Plaintiff has since informed this Court that the December 16, 1982 motion to amend was filed only three months after the federal defendants completed a wave of discovery which began on July 18, 1980 after the Rule 37(b) hearings and ended September 29, 1982. It entailed the federal defendants producing over 200,000 pages of documents, an average of over 2400 documents per week of production. March 19, 1987 Affirmation of Robert J. Boyle. Moreover, this Court found that prior to the federal defendants' opening of these informational floodgates, the federal defendants had been somewhat less than forthcoming in responding to plaintiff's prior discovery requests. *See* Transcript of Rule 37(b) Hearings held between April 28, 1980 to May 1, 1980 at p. 189–190; 259–261.

Considering the unique circumstances of this case, we find that plaintiff's counsel had been sufficiently diligent in culling through the massive amount of documents eventually produced by the federal defendants and in filing a motion to amend the complaint three months after the last of those documents were produced.[4] Accordingly, we reverse the Magistrate's determination as to these two defendants, and plaintiff shall be allowed to proceed with his claims against them.

### 2. Edwin Cooper

As to the proposed municipal defendant Edwin Cooper, however, we find that the Magistrate's determination that Cooper's involvement in the investigation of the Black Panther Party was revealed as early as 1970 and that therefore the doctrine of equitable relief would not toll the limitations period to be correct.

### 3. Additional Allegations

█ We also must reverse the Magistrate's ruling that plaintiff's proposed claims concerning defendants' alleged illegal conduct relating to his criminal conviction cannot be added. The Magistrate determined that because these allegations "would require this Court to determine an issue involving the validity of the conviction, plaintiff must bring these claims via a petition for a writ of habeas corpus under 28 U.S.C. § 2254, after exhausting his state court remedies." Order at 26 and 27. Subsequent to the Magistrate's ruling, however, plaintiff's conviction for the attempted murder of two police officers was vacated by a judge of the New York State Supreme Court and plaintiff has been released from custody. While the Magistrate did also note that these claims, in any event, did not relate back to the allegations of illegal surveillance made in the amended complaint under Rule 15(c) of the Federal Rules of Civil Procedure and therefore were untimely, we find that this ruling was clearly erroneous.

Fed.R.Civ.P. 15(c) is to be liberally construed permitting any amendments which make existing allegations more definite and precise. *Tiller v. Atlantic Coast Line*

---

**3.** *See* Transcript of Rule 37(b) Hearings held between April 28, 1980 to May 1, 1980.

**4.** Also, plaintiff's statement that "rather than filing successive motions to amend, plaintiff, in the interests of judicial economy filed one motion containing all of the additional allegations and defendants revealed from the documents," Plaintiff's Objections at 19, resonates with this Court.

*R.R.,* 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465 (1945); *Siegel v. Converters Transportation, Inc.,* 714 F.2d 213 (2d Cir.1983). Plaintiff's original complaint contained the following allegation:

> At plaintiff's recent criminal trial in New York City, *People v. Richard Moore,* (Indictment No. New York County), it was alleged by the prosecution that defendant members of the New York City Police Department (Metzdorf, Gruber, Massini and Codd) had classified plaintiff as a member of a group called the "Black Liberation Army." On information and belief, pursuant to this classification, and with the purpose and effect of violating plaintiff's First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments rights, defendant members of the New York City Police Department have engaged in and continue to engage in massive illegal, physical and electronic surveillance of alleged members of the Black Liberation Army, including plaintiff herein. This surveillance includes mail covers and openings, wiretapping, bugging and burglaries of plaintiff's premises.

Paragraph 26(a) of the amended complaint. Paragraph 63 and 64 of the proposed amended complaint alleges:

> that when plaintiff was arrested on June 5, 1971 the defendants began to fabricate a case against him—manipulating physical evidence, orchestrating the testimony of witnesses at his three trials (including but not limited to Pauline Joseph and Augustus Qualls), and withholding evidence proving his innocence.

It is the opinion of this Court that plaintiff's reference in his amended complaint to members of the NYCPD violating his "First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendment rights" in connection with his criminal trial gave defendants adequate notice of the claims he now proposes. *See Rosenberg v. Martin,* 478 F.2d 520, 526–27 (2d Cir.) *cert. denied,* 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973). His

proposed claims regarding his criminal conviction simply add substance to the skeletal claims contained in the amended complaint relating to the same general fact situation. We therefore grant plaintiff leave to further amend his complaint to include the allegations contained in paragraphs 63 and 64 of his proposed second amended complaint.

*Procedure For Invoking Executive Privilege*

■ The Magistrate ruled that the Police Commissioner properly invoked executive privilege with respect to approximately fifty thousand documents identified in response to what the Magistrate characterized as plaintiff's "exceedingly broad" discovery demands. *See* Transcript of November 21, 1986 Hearing at p. 13. The Magistrate did not determine, however, the merits of the municipal defendants' claims of privilege. Rather, the Magistrate only held that it is plaintiff's burden to establish the need for particular documents or categories of documents as to which executive privilege has been asserted.

Plaintiff argues that the Magistrate's ruling was clearly erroneous because a) no supervisory personnel participated in the document review and b) plaintiff was not given an affidavit for each document withheld describing the document and giving a reason for the invocation of the privilege. We disagree.

In arguing that the head of an agency must personally review and describe each document as to which executive privilege is asserted, plaintiff improperly relies upon *In re Agent Orange Product Liability Litigation,* 97 F.R.D. 427, 431 (E.D.N.Y.1983), which relates not to the qualified deliberative process privilege, which is the privilege asserted by the municipal defendants, but to the state secrets privilege, which is an absolute privilege.[5] *See also Kinoy v. Mitchell,* 67 F.R.D. 1, 10–11 (S.D.N.Y. 1975). Moreover, the Magistrate properly concluded that because plaintiff's discovery

---

5. Also, even if plaintiff's allegation that personnel who participated in the review of the documents had been involved in the disputed investigations and therefore were potential defen-

dants was accurate, it would not be reason alone to find that the procedures used by the municipal defendants in invoking privilege inadequate.

requests were not narrowly tailored, the procedures utilized by the municipal defendants in reviewing the documents and asserting the privilege was justified.

Next, it would be unduly burdensome to require the municipal defendants to submit an affidavit as to each of the approximately fifty thousand documents to which the municipal defendants have invoked executive privilege. It is wholly reasonable for the plaintiff to be required to make a showing that the categories of documents to which the privilege has been asserted are relevant to the claims set forth in the complaint. While plaintiff claims that it has insufficient information regarding the documents to make such a showing, they created this difficulty for themselves by making such an overly broad discovery request. Moreover, the burden on plaintiff to show the relevancy of the category of documents sought is of course much less than it would be if plaintiff had more detailed information regarding the individual documents to which the privilege has been invoked. Accordingly, we concur with the Magistrate's conclusion that "the municipal defendants assertion of privilege is not, as the plaintiff claims, fatally procedurally defective." Transcript of November 21, 1986 Hearing at p. 16.

*Motion to Dismiss*

▆ Magistrate Gershon recommended that we dismiss the claims for damages against defendants Robert Mardian and Clarence Kelley in their individual capacities. The Magistrate found that plaintiff had failed to make a *prima facie* showing of personal jurisdiction under the New York long-arm statute over defendants Mardian and Kelley in their individual capacities because plaintiff has failed to show that the alleged agents/co-conspirators of these defendants had acted on behalf of Mardian and Kelley in their individual capacities and for their personal benefit. Plaintiff does not object to any factual findings contained in the report. Moreover, while plaintiff does object to certain legal conclusions reached by the Magistrate, he has not raised any new issues. Rather, he only reiterates the three arguments that were previously raised before the Magistrate and specifically rejected by her. Specifically, he argues that 1) a desire to increase one's stature in government is a "personal benefit" giving rise to personal jurisdiction; 2) an official whose actions are motivated by racism is conferred a "personal benefit" sufficient to confer personal jurisdiction; and 3) filing false affidavits or otherwise concealing one's illegal or unconstitutional actions during the course of the litigation gives rise to personal jurisdiction.

After conducting a *de novo* review of the Magistrate's report, we find that we wholly agree with the Magistrate's reasoning and conclusions and therefore adopt her recommendation in full. While plaintiff gets high marks for his creativity in seeking to find a personal motivation behind these officials' challenged actions, he has failed to make a *prima facie* showing that these officials were pursuing their own individual interests.

Plaintiff is still left, however, with the opportunity to show that these defendants, in their official capacities, were pursuing certain governmental goals, proper or otherwise, in an unconstitutional manner. But, his claims against defendants Mardian and Kelley, in their individual capacities, are dismissed.

*Claim of Informant Privilege*

In late 1988, the FBI produced to plaintiff, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, a copy of plaintiff's address book which the FBI obtained while plaintiff was incarcerated. Plaintiff sought the identity of the person who took the address book from plaintiff's prison cell, copied it, and provided a copy of the address book to the FBI. The FBI in turn sought a protective order pursuant to Fed. R.Civ.P. 26(c) claiming that the FBI had extended to that source an express promise that his or her identity would be kept confidential by the FBI and that therefore the identity of that source is privileged. The FBI's motion for a protective order was denied by the Magistrate on April 16, 1990. The FBI sought reconsideration of that order by motion, which was denied by the

Magistrate in an order dated June 26, 1990. The FBI has now appealed that order claiming it "was issued contrary to controlling authority, and portions of the opinion in support of the order are clearly erroneous."

 The FBI first claims that plaintiff has failed to show that the information sought is not available from an alternative source. It is undisputed that plaintiff's address book was taken from his prison cell without his knowledge or consent. The FBI argues that plaintiff could attempt to find out who took his address book through discovery from the New York State Department of Corrections ("DOC"). Yet, realistically, this avenue of discovery would be an effective mechanism to uncover the informant only if it was an employee of the DOC who was responsible; and if it was a corrections officer who improperly took the address book from plaintiff's prison cell, no privilege would exist since, as the Magistrate found, a corrections officer, like a police officer, is not the proper subject of the informant privilege. *See Wood v. Breier*, 54 F.R.D. 7, 12 (E.D.Wisc.1972). Accordingly, this argument fails.

The FBI next attacks the Magistrate's report for according "no weight or deference to the agency's determination that serious impairment of law enforcement interests would follow from this breach of promise of confidentiality to an informant." Since the FBI is both a defendant in this action and the agency determining that serious harm will accrue if the name of the informant is revealed, the Magistrate was correct in carefully scrutinizing the FBI's advice on the importance of upholding the privilege rather than giving it the "deference" which the FBI claims is its right.

Finally, the FBI's argument that plaintiff's need for this information is minimal is also without merit. Plaintiff in this action seeks to enjoin the FBI's investigation of himself and his associates, and claims a need for the identity of the source in order to determine whether, because the FBI received his address book, the FBI is still investigating him. The FBI has moved to dismiss plaintiff's claims for equitable relief as moot, as without factual support, and as contrary to public policy. We fully agree with the Magistrate that further discovery may reveal that the FBI's receipt of the book is evidence of a continuing investigation, and that once the identity of the source is revealed, the plaintiff may be able to obtain facts from the informant that would further support his claim of an ongoing pattern of misconduct. Furthermore, if as plaintiff alleges, the FBI is presently investigating many of the names in the address book, injunctive relief would be justified since this inquiry, along with the taking of the book, would seem to establish "a persistent pattern of misconduct" sufficient to justify "the exercise of a federal court's equitable power." *Allee v. Medrano*, 416 U.S. 802, 815, 94 S.Ct. 2191, 2200, 40 L.Ed.2d 566 (1974).

For these reasons, we affirm the Magistrates ruling and the FBI must immediately provide plaintiff with the name of the informant who provided it with plaintiff's address book.

It Is So Ordered.