**The TRAVELERS INSURANCE COMPANY and the Travelers Indemnity Company, Plaintiffs,**

v.

**Reginald F. LEWIS, Defendant.**

**No. 89 Civ. 8030(MEL).**

United States District Court, S.D. New York.

Feb. 19, 1991.

Moritt, Hock & Hamroff (Neil J. Moritt, of counsel), Hempstead, N.Y. (Hebb & Gitlin, David G. Hetzel, Elliot N. Solomon and Jeffrey L. Williams, Hartford, Conn., of counsel), for plaintiffs.

Paul, Weiss, Rifkind, Wharton & Garrison (Mark H. Alcott, Stuart M. Cobert, Melissa T. Rosse, Kenneth Greenwald, Jay J. Lobell and Adam D. Mitzner, of counsel), New York City, for defendant.

LASKER, District Judge.

## I.

In July 1983, Reginald Lewis formed TLC Pattern, Inc. for the purpose of pur-

chasing The McCall Pattern Company ("McCall"). The majority stockholder of TLC Pattern was TLC Group, Inc. All of the stock of TLC Group was owned by Lewis or held in two trusts for the benefit of his minor children. In January 1984, TLC Pattern purchased McCall and Lewis became Chairman of the Board of TLC Pattern, Inc., which continued to do business under the name of McCall. In June 1987, Crowthers McCall Pattern, Inc. ("Crowthers") acquired McCall, changing the name to Crowthers McCall Pattern Company, Inc. ("Crowthers McCall"). Lewis was paid $53 million for his interests and remained one of four directors of McCall and an owner of 20% of its common (voting) stock, equivalent to a 2.6% equity ownership.

In September 1987, The Travelers Insurance Company and The Travelers Indemnity Company (collectively "Travelers") loaned $35 million to Crowthers McCall. The loan was evidenced by long term Senior Notes (the "Notes"). In September 1988, Crowthers McCall defaulted on the Notes and on December 9, 1988, Crowthers McCall filed a petition for reorganization under Chapter 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York.

Travelers asserts that at the time of the loan, it was led to believe that virtually all of McCall's revenues were derived from sales to consumers and concluded, based on that belief, that McCall's cash flow and operating profit were reasonably stable and sustainable. According to Travelers, it was not until December 1988, shortly before McCall's filed for bankruptcy, that it first learned that McCall's had two distinct forms of profit, one of which was called Trading Profit (derived from sales to the ultimate consumers) and the other Non–Trading Profit (arising from McCall's inventory practices and charges to its retailers). Non–Trading Profit comprised approximately 92% of McCall's total operating profit in 1986. Travelers alleges that had this information been disclosed during its due diligence inquiry, it would not have purchased the Notes which it now claims are worth substantially less than the $35 million it paid for them.

Lewis moves for summary judgment on the grounds that he did not and could not have had anything to do with or any knowledge of the alleged inaccuracies and omissions in the financial disclosures to Travelers. Because Travelers has failed to demonstrate the existence of a material dispute with regard to Lewis' role in Travelers' purchase of the Notes, summary judgment is granted in favor of Lewis.

## II.

### A. Travelers' Claim

Travelers seeks to hold Lewis liable for its loss based on its claims that Lewis (1) controlled Crowthers McCall and its management in connection with their allegedly misleading statements and omissions relating to the sale of the Notes, thereby violating § 12(2) of the Securities Act of 1933 ("1933 Act") and § 20(a) of the Securities Exchange Act of 1934 ("1934 Act"); (2) aided and abetted Crowthers McCall's alleged violation of § 10(b) and Rule 10b–5 of the 1934 Act; and (3) concealed certain financial information from Travelers prior to its purchase of the Notes.

Travelers asserts that from January 1984 when he acquired McCall until June 1987 when it was sold, Lewis dominated McCall. He was Chairman of the Board, owned a significant amount of stock in McCall and held positions of authority in its parent company. He took an active role in business planning and pricing strategies, was intimately familiar with McCall's finances, internal accounting and operational reports and performance. He was also senior partner of Lewis & Clarkson, McCall's outside general counsel.

Travelers asserts that the sale of McCall in June 1987 did not sever Lewis' connection with the company. Lewis remained one of four directors of McCall and an owner of 20% of its common (voting) stock. Lewis' law firm continued its representation of McCall. A Stockholders' Agreement dated June 30, 1987 required McCall to give Lewis prior notice of, and consult

with him concerning, a number of significant corporate actions, including, *inter alia*, the declaration or payment of dividends, redemption of securities, payments to stockholders, and the incurring of certain types of indebtedness.

The heart of Travelers' complaint against Lewis involves what Travelers claims was Lewis' continuing influence over Robert L. Hermann, who prior to the June 1987 acquisition was Executive Vice President of McCall. During Lewis' tenure as Chairman of the Board, Hermann developed certain internal financial reports called "Functional P & L [Profit and Loss] Statements." The Functional P & L Statements demonstrated that McCall's operating profit was derived mostly from "Non–Trading Profit" resulting from charges and price increases to dealers who held inventory on consignment and not from "Trading Profit" based upon sales to consumers.

Travelers maintains that according to Hermann, one could not truly understand how McCall worked without understanding the information contained in the Functional P & L Statements. Travelers relies heavily on the fact that when Hermann disclosed the Functional P & L Statements to McCall's Board of Directors, Lewis chastised him at length and ordered him never again to disclose the Functional P & L Statements to anyone. According to Travelers, even after June 1987 when Lewis was no longer Chairman of the Board and ceased to exercise day-to-day responsibility at McCall, "[t]hat order remained in place." Plaintiffs' Memorandum of Law at 3. Indeed, when Hermann disclosed the Functional P & L Statements to Travelers in December 1988, Hermann indicated that he had not disclosed them earlier because Lewis had ordered him never to disclose them to anyone. Travelers alleges that the Functional P & L Statements contained critical information concerning the source and sustainability of McCall's revenues, operating profit and cash flow which was not included in the Private Placement Memorandum relied upon by Travelers in its purchase of the Notes. Travelers claims that had it been aware of this information, it would not have purchased the Notes be-cause it would have known that the Notes were worth significantly less than the $35 million it paid for them. Lewis should be held responsible for the loss, Travelers asserts, because he reviewed the Private Placement Memorandum and was or should have been aware of its materially misleading omissions.

## B. Lewis' Grounds for Summary Judgment

A motion for summary judgment shall be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he burden on the moving party [to show the absence of a genuine issue concerning any material fact] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

"[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) ..." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Accordingly, to establish a genuine issue for trial on a motion for summary judgment, the non-moving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Co.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine issue for trial.'" *Id.*

Lewis asserts that there is no genuine issue of material fact as to his complete lack of involvement in the offering and sale of the Notes to Travelers. Lewis points out that in negotiating for the loan, Travelers had no dealings with him. He neither offered, negotiated, nor secured the sale of the Notes and he received none of the proceeds. He alleges that he was told nothing about the negotiations and had no contact concerning the transaction with any of the persons or entities involved and therefore he did not and could not have had

anything to do with or any knowledge of the alleged inaccuracies and omissions in the financial disclosures to Travelers.

Travelers dealt exclusively with Hermann, who at that time was Chief Executive Officer of Crowthers McCall, Craig Woods, the company's Chief Financial Officer, and Shearson Lehman Brothers ("Shearson"), which acted as placement agent for Crowthers McCall and prepared the Private Placement Memorandum for the offering. Lewis alleges that at the time, he was a minority stockholder who held none of the participating preferred stock and an outside director who played no part in the affairs of Crowthers McCall and had no authority over the persons running Crowthers McCall.[1] Lewis points out that Crowthers McCall was totally controlled by Crowther Group which had a 93.5% equity ownership of the common stock and controlled two of the four directors on the board. These two directors could override the votes of the others and therefore, Lewis argues, had full power over Crowthers McCall. Shearson appointed a third director and Lewis was the fourth. Although Lewis had the right to be notified of and consulted about certain corporate actions, he points out that he had no authority to veto corporate actions.

From June 1987, when Lewis sold McCall to Crowther, until September 1987, when Travelers purchased the Notes, Crowthers McCall did not call a single meeting of the Board of Directors and Lewis had no contact with any of the directors during this period. Lewis was not asked to, nor did he, participate in any management meetings or otherwise have any contact with the management of Crowthers McCall.

It is uncontroverted that Lewis was not asked to, nor did he, provide any information to Travelers in connection with the extensive due diligence investigation which it conducted prior to its purchase of the Notes. Nor does Travelers dispute that Lewis did not attend any meeting where the placement of the Notes was discussed and never had any contact with Travelers. Moreover, Lewis was neither contacted by, nor did he communicate with, anyone at Shearson, Travelers or Crowthers McCall in connection with the placement of the Notes. No one from Shearson or Crowthers McCall requested any information from him in connection with the preparation of the Private Placement Memorandum or efforts to secure an investor.

Lewis contends that his only involvement in the placement of the Notes is that he may have signed a *pro forma* consent to the sale of the Notes, and, upon receiving a copy of the completed Private Placement Memorandum, he skimmed it to ascertain the manner in which it described his prior role at McCall. Lewis maintains that since he lacked any knowledge about what information Shearson or the management of Crowthers McCall furnished to Travelers, he cannot be held accountable for what, if anything, they may have withheld.

As an additional basis for granting his motion, Lewis alleges that Travelers had adequate notice of the information allegedly withheld. The documentary material Travelers received described at length the general health of the pattern industry, the decline in unit volume sales, and stiff competition. The Private Placement Memorandum, as well as other documents reviewed by Travelers, disclosed that the practice of pattern "discard" provided a source of revenue for McCall.

### III.

#### A. Control Person Liability

Section 77*o* of the 1933 Act provides: Every person who, by or through stock ownership, agency or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77*l* of this title, shall also be liable jointly

---

1. Outside directors are "directors who are not full time employees of the corporation," *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1306 (2d Cir. 1973), or directors "who would not [be] involved in the day-to-day operations of the company." *Goldman v. Belden,* 754 F.2d 1059, 1071 (2d Cir.1985).

and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

Section 78t(a) of the 1934 Act provides: Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Travelers asserts that Lewis exercised control through his ownership of Crowthers McCall stock, his position as a director of Crowthers McCall and former Chairman of the Board and principle shareholder of McCall, and his · relationships with Hermann, Wood and Crowthers McCall. Lewis maintains that Travelers has failed to allege facts sufficient to establish that Lewis possessed the authority to direct or influence Hermann, Woods or Crowthers McCall.

■ In *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir.1973), the Court of Appeals for the Second Circuit established a two-part inquiry to determine derivative liability as a control person. First, the court must ascertain whether the nature of the relationship between the purported controller and controllee is such that the defendant possesses the actual authority to influence and direct the activities of the primary wrongdoer. Second, even if the defendant has such authority, a defendant is not liable unless he is also a culpable participant in the fraud.

■ While status as an officer, director or shareholder creates a presumption of control, that presumption "can be rebutted if the alleged controlling person proves an absence of actual control." *Savino v. E.F.*

*Hutton & Co.*, 507 F.Supp. 1225, 1243 (S.D. N.Y.1981). *See also Hemming v. Alfin Fragrances, Inc.*, 690 F.Supp. 239, 245 (S.D.N.Y.1988) (mere status as officer, director or shareholder not enough to show control); *Bernstein v. Crazy Eddie, Inc.*, 702 F.Supp. 962, 979 (E.D.N.Y.1988) (directors and officers not controlling person because company's founder and chief executive officer exercised sweeping authority).

■ Although Lewis was a director and shareholder of Crowthers McCall, he was neither involved in the management of the corporation nor endowed with any actual authority to influence or direct Hermann, Woods or anyone else at Crowthers McCall. Lewis's ownership of 20% of Crowthers McCall's common stock, equivalent to a 2.6% share of its equity, did not provide him with any authority to control Crowthers McCall. Similarly, Lewis had no control over Crowthers McCall by virtue of his position as a director, insofar as he was an outside director of a four-member Board, two of whom were chosen by Crowthers McCall and had overriding power. Hermann and Woods were responsible for day-to-day operations of Crowthers McCall, subject only to veto by Crowthers McCall's two inside directors. Hermann and Woods assisted Shearson in the preparation of the Private Placement memorandum, furnished financial information to Travelers in response to its due diligence investigation, and met with Traveler's representatives. Lewis could not direct, influence or determine the compensation level of nor fire Hermann or Woods.

■ Even if Lewis had the authority to direct Hermann, Woods or Crowthers McCall in their commission of the alleged fraud, which has not been established, Lewis would not be liable as a controlling person because the uncontested facts demonstrate his lack of involvement in or knowledge of any fraud. As a non-participant in the negotiations, Lewis did not know and could not have known what was disclosed or omitted in the meetings, telephone calls, and various communications between Crowthers McCall, Hermann,

Woods, Shearson and Travelers. As an outside director, Lewis had no duty to ensure that Crowthers McCall, Hermann, Woods and Shearson delivered all relevant materials to Travelers. *Lanza v. Drexel & Co.,* 479 F.2d at 1299 (outside director has no duty to insure all material adverse information is conveyed; meaningful culpable participation is requisite element for liability). *See also Sun First Nat'l Bank v. Miller,* 77 F.R.D. 430, 440 (S.D.N.Y.1978) (some level of "meaningful culpable conduct" necessary to establish § 10(b) control liability).

Travelers does not allege that Lewis had any knowledge of what Hermann, Woods, Crowthers McCall, Shearson, or anyone else was producing to Travelers. Rather, Travelers predicates its claim of fraud on Lewis's admonishment to Hermann not to disseminate the Functional P & L Statements. However, Lewis made this statement prior to the 1987 sale of the company and before the offering or issuance of the Notes. Accordingly, the incident is irrelevant to Lewis's alleged *post*-sale control of Hermann, Woods or Crowthers McCall.

The first four counts of the complaint are dismissed because Lewis did not control Hermann, Wood or Crowthers McCall within the meaning of §§ 77o and 78t(a) of the 1933 and 1934 Acts and therefore he is not liable for their allegedly fraudulent conduct.

### B. Aiding and Abetting Liability

To establish liability for aiding and abetting under § 10(b) and Rule 10b–5, a plaintiff must plead and prove, *inter alia,* (1) knowledge by the aider and abettor that the alleged primary wrongdoer has committed a securities law violation; and (2) conduct by the aider and abettor constituting substantial assistance in achieving the primary wrongdoer's purported fraud. *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983).

Travelers has not alleged facts which, if proven, would establish that Lewis had knowledge of the alleged omissions. Lewis did not participate in any way in the sale of the Notes to Travelers. Lewis did not prepare or assist in the preparation of the Private Placement Memorandum. He did not furnish to anyone any information relating to the Notes, nor was any such information requested of him. Lewis did not participate in any meetings between Travelers and Hermann, Woods, Crowthers McCall or Shearson. During the entire period of the negotiations with Travelers, Lewis did not discuss the transaction with Hermann, Woods, or anyone else at Crowthers McCall, Shearson, or Travelers. Accordingly, Lewis had no reason to know what Hermann, Woods, Crowthers McCall or Shearson were disclosing to Travelers, and no reason to believe that they did not furnish all relevant information that was or should have been requested of them.

Even if Travelers were able to plead and prove that Lewis had knowledge of the alleged 10b–5 violation, Lewis did not substantially assist in the violation. His sole alleged assistance was his silence. Silence, without more, fails to support a claim for 10b–5 aider and abettor liability as a matter of law. *Chase Manhattan Bank, N.A. v. Fidata Corp.,* 700 F.Supp. 1252, 1262, 1264 (S.D.N.Y.1988) (allegation that bank was silent after learning that its customer was defrauding bank's competitor was, without more, insufficient as a matter of law to state claim for aider-abettor culpability). To establish aiding and abetting liability based on silence, a plaintiff must show either that (1) the silence "was in conscious and reckless violation of a duty to act," (*Armstrong,* 699 F.2d at 91); or (2) the defendant was an "entity with a direct involvement in the transaction" who had a "conscious and specific motivation for not acting." *ITT, International Invest. Trust v. Cornfeld,* 619 F.2d 909, 927 (2d Cir.1980).

The facts and the law do not support an allegation that Lewis "was in conscious and reckless violation of a duty to act." As an outside director of Crowthers McCall who played no role in the transaction, Lewis had no duty to inject himself in negotiations in which he had not been included, and disclose adverse material facts or information to prospective purchasers of securities, even if he had knowledge of any purported

adverse facts and information. An outside director has "no duty ... to insure that all material adverse information about the corporation was conveyed to prospective purchasers of the company's stock." *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 119 (2d Cir.1982). Indeed, "in the absence of direct participation in a securities violation, an outside director has no duty to disclose adverse material facts or information to those prospective purchasers." *In re Union Carbide Corp. Consumer Products Business Secur. Litigation*, 666 F.Supp. 547, 563 (S.D.N.Y.1987). As a non-participant, lacking any actual authority to participate in the preparation of the documents in question, Lewis had no duty to disclose even assuming knowledge.

Nor has Travelers alleged that Lewis had a "direct involvement in the transaction" and a "conscious and specific motive for not acting." Lewis had no involvement whatsoever in the transaction between Crowthers McCall and Travelers and did not receive any of the proceeds of the loan. Lewis held less than 3% of the equity of Crowthers McCall and only 20% of its common stock. Therefore, the potential benefit, if any, to him from the loan was remote, indirect and not discernible. Mere potential for financial gain by an alleged aider and abettor is not indicative of a "high conscious intent to aid and abet a securities law violation." *Chase Manhattan Bank, N.A. v. Fidata Corp.*, 700 F.Supp. 1252, 1262–63 (S.D.N.Y.1988); *In re AM International, Inc. Secur. Litigation*, 606 F.Supp. 600, 606–07 (S.D.N.Y. 1985); *In re Union Carbide*, 666 F.Supp. at 564.

Travelers has failed to satisfy any of the requisite elements of aiding and abetting. The pleadings and affidavits demonstrate conclusively that Lewis had no knowledge of any 10b–5 violation, assuming one had occurred. Travelers has failed to allege any facts showing that Lewis's silence substantially assisted Crowthers McCall in any alleged violation, either by a "conscious and reckless violation of a duty to disclose" or a "conscious and specific motive for not acting." Accordingly, Lewis's motion for summary judgment dismissing Traveler's fifth count alleging aiding and abetting is granted.

### C. Common Law Fraud

In New York, liability for common law fraud requires proof by clear and convincing evidence that a misrepresentation or omission of material fact has been made, that the defendant had an intent to deceive (scienter), and that the injury to the plaintiff was caused by defendant's misrepresentation or omission.

Lewis did not make any representations to Travelers, did not participate in the preparation of the Private Placement Memorandum, did not communicate with anyone at Travelers concerning the Notes, and did not furnish any materials to Travelers in connection with the Notes. Nor did Lewis make any representations or have any communications about the Notes with Hermann, Woods, Crowthers McCall or Shearson. Lewis was not aware of the ongoing negotiations with Travelers. Thus, he could not have intended that any alleged fraudulent misrepresentations be conveyed to Travelers. *See Peerless Mills, Inc. v. American Tel. & Tel. Co.*, 527 F.2d 445, 450 (2d Cir.1975) (defendant not liable for alleged fraudulent misrepresentations where plaintiff failed to prove defendant "intended the misrepresentation to be conveyed to [plaintiff]").

Nor was Lewis responsible for any alleged misrepresentations or omissions of any person who communicated with or furnished information to Travelers in connection with the Notes. *See Marine Midland Bank v. John E. Russo Produce Co.*, 50 N.Y.2d 31, 45, 427 N.Y.S.2d 961, 968–69, 405 N.E.2d 205, 211–13 (1980) ("[C]orporate officers and directors are not liable for fraud unless they personally participate in the misrepresentation or have actual knowledge of it."); *Prudential–Bache Metal Co. v. Binder*, 121 A.D.2d 923, 504 N.Y. S.2d 646 (1st Dep't 1986) (no liability for shareholders and officers in absence of substantive allegations that they personally participated in or had actual knowledge of the alleged fraud).

Travelers also fails to allege facts which would support the conclusion that Lewis possessed the requisite scienter to be liable for common law fraud. The complaint fails to allege any fact or incident that suggests that Lewis intended to defraud Travelers. Lewis did not know what representations were made by Hermann, Woods, Shearson, or anyone else relating to the Senior Notes and therefore had no reason to believe that any such representations were deceptive. Accordingly, scienter may not be inferred from knowledge of alleged false representations.

To recover on a claim of common law fraud, the plaintiff's damages "must be the direct result of the defendant's wrongful actions and must be independent of other causes." *Idrees v. American University of Caribbean*, 546 F.Supp. 1342, 1350 (S.D. N.Y.1982). Travelers also does not allege facts which indicate that its alleged injury was proximately caused by the claimed misrepresentations or omissions of Lewis. Moreover, it has not explained how, if at all, Crowthers McCall's default on the Notes was related to revenues generated by the pattern discard system or the purported decline in those revenues. Accordingly, Lewis's motion for summary judgment on Travelers' sixth count is granted.

## D.  Statutes of Limitations

There are serious questions about whether these actions were timely commenced. References to Non–Trading profit in documents that were made available to Travelers as part of its due diligence cast doubt upon Travelers claim that it could not have discovered the alleged fraud prior to December of 1988, when Hermann brought the Functional P & L Statements to the attention of Gonder.

## E.  Discovery

Federal Rule of Civil Procedure 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The Court of Appeals for the Second Circuit has held that "a 'bare assertion' that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f)." *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir.1981). As noted by the court in *Contemporary Mission, Inc. v. New York Times Co.*, 665 F.Supp. 248, 269 (S.D.N.Y. 1987),

> Plaintiffs under Rule 56(f) must therefore establish 1) that they have been denied reasonable access to the material requested; and 2) that the material requested constitutes potentially favorable information. In addition, the plaintiffs must identify specific issues of material fact which are likely to be disclosed if they are granted a reasonable opportunity to pursue the additional discovery they seek.

■ Travelers argues that Lewis' motion for summary judgment is premature and should be denied or continued pursuant to Rule 56(f). However, Travelers has failed to establish that it has been denied reasonable access to discovery thus far or that potentially favorable information exists to be discovered. Travelers' affidavit fails to mention what specific discovery it would pursue or what information that additional discovery would likely yield. Accordingly, the motion to allow discovery to continue is denied.

Judgment is granted in favor of Lewis on each of Travelers' claims against him and the complaint is dismissed.

It is so ordered.