JOHN HANCOCK PROPERTY AND CASUALTY INSURANCE COMPANY, successor to Hanseco Insurance Company and Clarendon Asset Management Corporation, Plaintiff,

v.

UNIVERSALE REINSURANCE COMPANY, LTD., Defendant.

No. 91 Civ. 3644 (CES).

United States District Court, S.D. New York.

March 4, 1993.

Mound, Cotton & Wollan by Eugene Wollan, Michael H. Goldstein, David I. Schonbrun, New York City, for plaintiff.

Kroll & Tract by Mark S. Fragner, New York City, for defendant.

### MEMORANDUM DECISION

STEWART, District Judge:

Plaintiffs John Hancock Property and Casualty Insurance Company, successor to Hanseco Insurance Company, and Clarendon Asset Management Corporation[1] move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R.Civ.P.") against defendant Universale Reinsurance Company, Ltd. ("Universale") on their first, fourth and ninth causes of action. Alternatively, Hancock moves to strike the amended answer and to enter a default judgment against Universale for its failure to post a bond or other type of security with the clerk of the court as required by New York Insurance Law section 1213(c)(1).

As set forth below, full consideration of Hancock's summary judgment motion is postponed in order to permit Universale to conduct additional discovery. In addition, Universale shall comply, within forty-five days from the date of this order, with New York Insurance Law section 1213(c)(1).

### I. FACTS

Plaintiff Hancock Company is a corporation engaged in the business of insurance and reinsurance. It is organized under the laws of Delaware and has its principal place of business in Massachusetts. It is licensed to conduct business in New York. Plaintiff Clarendon is also a Delaware corporation with its principal place of business in Massachusetts. It is the assignee of certain rights from Hancock Company's predecessor company, Hanseco. Defendant Universale is a corporation which engages in the business of reinsurance. It is organized and exists pursuant to the laws of Switzerland. Its principal place of business is in Zurich. It is not licensed to conduct business in New York State. The Court has jurisdiction of the instant case pursuant to 28 U.S.C. § 1332.

■ Between 1982 and 1987, Hancock purchased reinsurance under a Proportional Casualty Retrocession Agreement. This contract provided that various retrocessionaires would indemnify Hancock for a certain percentage of losses incurred from casualty reinsurance contracts it entered into.[2] In turn,

---

1. Collectively "Hancock;" individually the "Hancock Company," "Hanseco" and "Clarendon."

2. Reinsurance is an agreement involving an insurer—known as the cedent or reinsured—who transfers certain risks it has assumed to a second insurer, known as the reinsurer. When this reinsurer in turn transfers this risk, the transaction is known as a retrocessional agreement. The transferring reinsurer is known as a retrocedent; the assuming reinsurer is known as a retrocessionaire. *See generally* Ostrager & Newman, *Handbook on Insurance Coverage Disputes*, § 15 (5th ed. 1992).

The type of reinsurance contract involved in the instant case is known as "treaty" insurance. Treaty reinsurance involves an ongoing agreement between two insurers, binding one in

the retrocessionaires were to receive premiums earned by Hancock from these casualty reinsurance contracts. The instant dispute stems from three alleged Interests and Liability Contracts[3] between Universale and Hancock to this Proportional Casualty Retrocession Agreement.

### A. The 1985 Treaty

Universale agreed to participate in the 1985 Treaty for a 6.25% share. Studley Aff. 7/17/92, Ex. 1. Pursuant to this treaty, Hancock paid Universale premiums, minus the appropriate percentage of losses, from the first quarter of 1985 to the third quarter of 1987. Since January of 1988, these losses have exceeded the premiums. Hancock alleges that Universale failed to pay for losses exceeding the premiums, and thus is in breach of the 1985 Treaty. Hancock alleges it is owed $1,194,642.00 plus interest. Studley Aff. 7/17/92, ¶¶ 13, 14, Ex. 7.

Universale does not dispute these allegations, but rather maintains that the 1985 Treaty is invalid and thus unenforceable since Hancock made material misrepresentations of fact in its solicitation. Specifically, Universale alleges that Hancock's reinsurance intermediary, John P. Woods Company, Inc. ("JPW"),[4] represented that premium income for 1985 would be $16,000,000.00 Karli

Aff. Exs. A, B. In fact, the premium income was more than three times the solicited amount.[5] Karli Aff. Ex. D. After learning of this higher premium income, Universale attempted to lower its participation in the 1985 Treaty to 3.125%. *Id.* Hancock never formally agreed to such a reduction.

### B. The 1986 Treaty and The 1987 Treaty

Hancock also alleges that there is a 1986 Treaty and a 1987 Treaty between it and Universale for shares of 6.25% and 3.125%, respectively. Unlike the 1985 Treaty, neither the 1986 Treaty nor the 1987 Treaty were ever executed by Universale.[6] Studley Aff. 7/17/92, Ex. 2, 3. Universale maintains that it did not intend to enter into a contract for either 1986 or 1987 absent the execution of written agreements. Universale contends that any communications concerning those treaties were merely evidence of negotiations. Thus, Universale's position is that there is no valid and enforceable treaty for either 1986 or 1987.

Despite Universale's position, this Court previously held that the forum selection clauses[7] contained in the two treaties provided a basis for jurisdiction in New York. Order, February 5, 1992, 1992 WL 26765. To reach this holding, the Court found that

advance to cede and the other to accept business that is the subject of the treaty. The reinsurer, under a single contract, agrees to indemnify the ceding insurer with respect to an entire 'book' of the ceding insurer's underwriting activities for designated lines of insurance.... Such treaty arrangements typically involve the participation of numerous reinsurers, each agreeing to assume a percentage of the total liability under a single treaty.

*Id.* § 15.03[a] (citations omitted).

**3.** Collectively the "Treaties;" individually, the "1985 Treaty," the "1986 Treaty" and the "1987 Treaty."

**4.** JPW is incorporated and has its principal place of business in New York. Its correspondent broker in France, Le Blanc et de Nicolay ("Le Blanc"), was also involved in the negotiations concerning the Treaties. Communications between Hancock and Universale concerning the Treaties were to be conducted through JPW. *See* Studley Aff. 7/17/92, Ex. 1 ¶ 17, Ex. 2 ¶ 17, Ex. 3 ¶ 17.

**5.** Premium volume projections effect a reinsurer's analysis of the risk assumed. Differences

between the projected premium and the actual premium lead, in turn, to apparently even larger differences between projected and actual losses. Karli Aff. ¶ 7.

**6.** All three treaties required Universale to provide Hancock with a clean irrevocable letter of credit in an amount equal to Universale's share of the unearned premium and loss reserves. Studley Aff. 7/17/92, ¶ 9. The 1986 Treaty and the 1987 Treaty also required Universale to include in its letter of credit an amount for incurred but not reported losses ("IBNR"). *Id.* at ¶ 15.

**7.** All three treaties contained a service of suit provision that provided:

... the Retrocessionaires ... will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court. *See* Studley Aff. 7/17/92, Ex. 1 ¶ 16, Ex. 2 ¶ 16, Ex. 3 ¶ 16.

Hancock had made a *prima facie* showing that these treaties existed.[8] *Id.* at 16. It was noted that the parties, or their intermediaries, had communicated amongst each other several times concerning the two treaties. *Id.* at 12. In addition, for both treaty years, Universale sent telexes to plaintiff's reinsurance intermediary confirming its share percentage for the respective year. *Id.* Moreover, Universale accepted premium payments from Hancock for these two years that totaled close to three million dollars. *Id.* at 10. For these reasons, this Court held that Universale's contention that it had no intent to be bound to these two treaties was not persuasive. *Id.* at 15.

Following the February order, this Court granted Universale's former attorneys leave to withdraw. Order, March 19, 1992. On June 10, 1992, Universale filed its answer. Less than two months later, Hancock filed the instant summary judgment motion. Since there were no transcript excerpts attached to the papers, it appears that there were no depositions taken prior to the filing of this motion.

### C.  The Karli Affidavit

Universale's opposition papers to the summary judgment motion rely on one affidavit, that of Arthur E. Karli, its managing director. Mr. Karli, however, has only been Universale's managing director since 1990, several years after the events occurred that are the subject of this litigation. Karli Aff. ¶ 2. Mr. Karli bases his statements on a review of certain Universale records as well as documents produced by Hancock. *Id.* ¶ 3. Nowhere in the affidavit does Mr. Karli maintain that his statements are based on his personal knowledge. Indeed, an examination

of the affidavit indicates that Mr. Karli's statements about the disputed events were not made with his personal knowledge. *See, e.g., id.* ¶¶ 7, 10, 12 and 13.[9]

Mr. Karli states that certain assertions in his affidavit can, "[u]pon information and belief, . . . be confirmed by Universale's former employees" and personnel at JPW and Le Blanc involved in the subject transactions. *Id.* ¶ 21. These individuals are apparently important to Universale's defense of this case. *Id.* ¶ 3. For instance, Mr. Karli maintains that Universale's underwriter would not have participated in the 1985 Treaty had he or she known of the increase in premiums. *Id.* ¶ 7. Similarly, Mr. Karli maintains that Universale did not intend to enter into the 1986 Treaty or 1987 Treaty "absent the execution of a written agreement, setting forth each and every term thereof." *Id.* ¶ 10. Mr. Karli also claims that Universale's position on the extensive correspondence about these two treaties can be confirmed by its former employees. *Id.* ¶ 21. Affidavits or deposition testimony from these former employees, however, has not been obtained.[10] *Id.* Moreover, Universale has not obtained affidavits or deposition testimony from employees of JPW and Le Blanc. *Id.* Although neither Mr. Karli nor Universale's attorneys detail their efforts to depose or obtain affidavits from these individuals, they claim that this discovery is "essential to a determination of the issues" in this case. *Id.*

## II.  DISCUSSION

### A.  Federal Rules of Civil Procedure 56(e)

■ As a preliminary matter, Hancock[11] maintains that the Karli affidavit cannot be

---

8.  This Court also noted that at that stage in the litigation we would not conduct a "full exploration of the validity and enforceability of the agreement between the parties...." Order, February 5, 1992 at 15–16.

9.  For example, the Karli affidavit states:

7. ... Had Universale's underwriter known that actual premiums for the 1985 underwriting year would have exceed [sic] projections by over 300%, clearly he would not have participated in the 1985 contract and most certainly he would not have considered subsequent renewals.

10.  First, Universale never executed the contract documents submitted by Hancock relative to the 1986 and 1987 years of account, nor did it *intend* to enter into contracts in those years absent the execution of a written agreement.... (emphasis in original)

10.  In addition, Universale's files concerning these transactions have also been lost or misplaced. Karli Aff. ¶ 3.

11.  Hancock objects to the Karli affidavit in its Reply Memorandum of Law, and not by a motion to strike. Nonetheless, this Court can entertain such an objection. *Cf. McCloud River R.R. Co. v.*

considered because it fails to comply with Fed.R.Civ.P. 56(e).[12] This provision prohibits consideration of affidavits made without personal knowledge. *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.1988). *See also Austracan (U.S.A.), Inc. v. Neptune Orient Lines, Ltd.*, 612 F.Supp. 578, 586–87 (S.D.N.Y.1985). In *Austracan*, an important issue was when a loss of a shipment occurred. Defendant relied on the affidavit of a United States Customs Director, whose statements were based on records indicating that an unnamed Customs Inspector had examined the shipment in question and found it intact. The court refused to consider the affidavit because it failed to comply with Fed.R.Civ.P. 56(e). Specifically, the court held that the United States Customs Director "cannot testify as to what the unnamed Customs Inspector ... actually did." *Id.* at 587.

The facts in the instant case are closely analogous to those in *Austracan.* Mr. Karli's affidavit relies on unnamed individuals who allegedly would neither have participated in the 1985 Treaty nor considered renewals thereto. Karli Aff. ¶ 7. Like the United States Customs Director, Mr. Karli cannot testify as to what Universale's former employees would or would not have done during the negotiations concerning the Treaties. Accordingly, this Court cannot consider the Karli affidavit since it fails to comply with Fed.R.Civ.P. 56(e). However, this Court can consider the exhibits attached to the Karli affidavit to the extent they contain evidence that is admissible. *See Golotrade Shipping & Chartering, Inc. v. Travelers Indem. Co.*, 706 F.Supp. 214, 217 n. 3 (S.D.N.Y.1989).

#### B. Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 110 (2d Cir.1992) (citing *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir. 1991)). The court is not to resolve disputed issues of fact when determining a summary judgment motion. Rather, the court is to determine whether factual disputes exist that are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). *See also Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

The substantive law identifies those factual disputes that are material. The *Anderson* Court held that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." 477 U.S. at 248, 106 S.Ct. at 2510. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In other words, the nonmoving party must put forth sufficient evidence concerning a material factual dispute so as to require the trier to resolve these different versions of the truth. *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). Only when these factual disputes are resolved may the related legal issues be considered. *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). Finally, summary judgment is also appropriate if a party fails to "establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party always bears the initial burden of production by demonstrating "the

---

*Sabine River Forest Products, Inc.*, 735 F.2d 879, 882 (5th Cir.1984) (party waived any objections when it "neither moved to strike the affidavit nor raised an objection to consideration of the affidavit").

12. This provision provides in part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e).

absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. When the moving party bears the ultimate burden of persuasion on a particular claim, it must show that it would be entitled to a directed verdict at trial. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. However, when the nonmoving party bears the ultimate burden of persuasion, the moving party's burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. The moving party may "discharge" its burden by either pointing to evidence negating an essential element of its opponent's claim, or by asserting that the nonmoving party's evidence is insufficient to establish a required element of its case. *Id.* at 331, 106 S.Ct. at 2556 (Brennan, J., dissenting).

Once the moving party has met its initial burden of production and met or discharged its burden of persuasion, the nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). *See also Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Alleged factual disputes may not be enough to defeat a summary judgment motion; only genuine disputes over material facts will do so. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. Thus, "[c]onclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & Hudson Ry. v. Consolidated Rail Co.*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)). But all factual disputes should be resolved— and all reasonable inferences be found—in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. Further, all factual allegations of the nonmoving party that are supported by affidavits or other evidence should be regarded as true. *Burt-*

*nieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983).

### 1. The 1985 Treaty

■ Hancock's first cause of action alleges that it is entitled to $1,194,642.00 in damages, plus interest, resulting from Universale's breach of the 1985 Treaty. To succeed in a breach of contract claim, four elements must be satisfied: the making of a contract, performance of the contract by one party, breach of the contract by the other party, and damages suffered by the performing party. *Van Brunt v. Rauschenberg*, 799 F.Supp. 1467, 1470 (S.D.N.Y.1992) (citing *Stratton Group, Ltd. v. Sprayregen*, 458 F.Supp. 1216, 1217 (S.D.N.Y.1978)). Neither party disputes the existence of the 1985 Treaty, nor whether Hancock performed its obligations under the contract. Further, neither party seriously disputes that Universale failed to perform pursuant to the treaty's terms, and is therefore in breach of contract. Finally, neither party disputes that as a result of Universale's breach, Hancock suffered damages totalling $1,194,642.00 plus interest.

Universale, however, maintains that the 1985 Treaty is unenforceable because Hancock made material misrepresentations of fact in its solicitation. Specifically, the actual 1985 premium income was apparently more than three times the amount projected in JPW's solicitation of Universale. Karli Aff., Exs. A, B, D. These increased premiums significantly enhanced Universale's potential and actual loss exposure. Universale contends that it may not have participated in the 1985 Treaty had it known that the premium income would be three times the projected amount.[13]

Universale's claim of misrepresentation fails unless it can show that the premium income projections were made with the knowledge that they were incorrect. Statements concerning future projections are generally not actionable. *See Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir.1987). *See also CNA Reinsurance of London, Ltd. v. Home Ins. Co.*, 85 Civ. 5681, 1990 WL 3231, *13, 1990 U.S.Dist.Lexis 159, *34 (S.D.N.Y.

---

13. After Universale learned of the actual premiums, it apparently requested a reduction in its participation percentage for the 1985 Treaty. Karli Aff. Ex. D.

Jan. 10, 1990) (statements concerning the volume and profile of business that the reinsured anticipated were "no more than a projection of or promise of future conduct"). However, future projection statements are actionable if, when made, they were known to be false. *See Calvert Fire Ins. Co. v. Unigard Mutual Ins. Co.*, 526 F.Supp. 623, 646 (D.Neb.1980), *aff'd without opinion*, 676 F.2d 707 (8th Cir.1982).

In the instant case, no evidence has been submitted by either party indicating that the premium income projection, when made, was known to be false. Universale, however, requests that it be given additional time to conduct discovery on this issue. Although Universale has failed to provide this Court with details concerning its efforts to obtain discovery on this issue, Hancock has also not submitted any evidence indicating that its opponent has been dilatory. Indeed, Universale was confronted with this summary judgment motion less than two months after it filed its amended answer.

2. *Federal Rule of Civil Procedure 56(f)*

■ Fed.R.Civ.P. 56(f) permits a court to deny or postpone consideration of a summary judgment motion so that additional discovery can be taken.[14] In fact, summary judgment can only be granted against a nonmoving party "after adequate time for discovery." *Carter v. AT & T Communications*, 759 F.Supp. 155, 160 (S.D.N.Y.1991) (quoting *Cel-*

*otex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Moreover, Fed.R.Civ.P. 56(f) "should be applied with a spirit of liberality." *Id.* (quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2740 (1983)).

The Second Circuit recently noted that "[a]t least when the party opposing the motion has not been dilatory in seeking discovery, summary judgment should not be granted when [that party] is denied reasonable access to potentially favorable information." *Robinson v. Transworld Airlines, Inc.*, 947 F.2d 40, 43 (2d Cir.1991) (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980)). In *Robinson*, the corporate defendant had not provided certain discovery before it moved for summary judgment. The court held that the plaintiff should have been entitled to such discovery prior to responding to the defendant's summary judgment motion. The court, however, did permit the defendant to renew its motion upon completion of this discovery.

*Robinson* is applicable to the instant case. Although Universale was not denied access to information by its opponent, it nonetheless has been unable to obtain discovery from its former employees. Moreover, there has been no showing, nor even an allegation, that Universale has been dilatory.[15]

**14.** Fed.R.Civ.P. 56(f) provides in part:
Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**15.** Universale also satisfies the more stringent four part test enunciated in *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir.1989). This test requires a party seeking time to conduct discovery pursuant to Fed.R.Civ.P. 56(f) to file an affidavit explaining "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Id.* (citing *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 926 (2d Cir.1985)). Failure to file an affida-

vit can be sufficient grounds to not continue discovery. *Cooperative Centrale Raiffeisen–Boerenleen Bank B.A. v. Northwestern Nat'l Ins. Co. of Milwaukee*, 778 F.Supp. 1274, 1280 n. 9 (S.D.N.Y.1991). This test was applied in *Travelers Ins. Co. v. Lewis*, 756 F.Supp. 172 (S.D.N.Y. 1991), where plaintiff failed to establish that it had been denied reasonable access to discovery or that potentially favorable information could have been discovered. "Traveler's affidavit fails to mention what specific discovery it would pursue or what information that additional discovery would likely yield." *Id.* at 180.

Applying the test to the instant case, Universale is entitled to additional time to conduct discovery. The affidavit of Mr. Karli explained what facts Universale sought. Karli Aff. ¶ 21. The affidavit also explained how this information would create material issues of fact. Karli Aff. ¶¶ 7, 21. *Cf. Travelers Ins. Co.*, 756 F.Supp. at 180. Although Mr. Karli did not set forth details concerning the third and fourth factor of the test, Universale presumably could do so if requested. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. at

Hancock's reliance on *L. Orlik Ltd. v. Helme Prod. Inc.*, 427 F.Supp. 771 (S.D.N.Y. 1977), is misplaced. Pls.' Reply Mem. at 17. In *Orlik*, the defendant failed to meet the Fed.R.Civ.P. 56(f) requirements because the missing information was within their "knowledge and control." *Id.* at 778. In the instant case, however, Universale's former employees are no longer within its "control." Rather, these former employees are analogous to missing witnesses. As Professor Moore noted: "Rule 56(f) may also apply when the opposing party has not been able to locate a witness who has knowledge of material facts which would defeat or aid in defeating the motion for summary judgment...." 6 (pt. 2) J. Moore, Moore's Federal Practice ¶ 56.-24, (2d ed. 1992). *See also Landis v. Pate*, No. 84 Civ. 993, slip op. at 5 (E.D.Wis.1985) (court refuses to decide summary judgment motion because witness is unavailable).

Accordingly, this Court will permit Universale to conduct additional discovery concerning the 1985 Treaty. Therefore, the Court will not now consider the summary judgment motion as it relates to Universale's affirmative defenses to the cause of action concerning the 1985 Treaty.

### 3. *The 1986 Treaty and The 1987 Treaty*

Hancock also moves for summary judgment on its fourth and ninth cause of action, which relate to the 1986 Treaty and the 1987 Treaty. In opposition to this motion, Universale argues that neither treaty exists. Despite this argument, Universale has accepted premiums totalling over three million dollars under the two treaties. Studley Aff. 9/23/92, ¶¶ 4, 6, 8, 9, Exs. 1, 2, 3. Moreover, this Court previously ruled that Hancock had made a *prima facie* showing that the two treaties did exist. Order, February 5, 1992, 1992 WL 26765. Although this ruling was made in the context of a motion to dismiss, it is nonetheless the law of the case. *See Ry. Labor Executives' Ass'n v. Metro–North*

*Commuter R.R. Co.*, 759 F.Supp. 1019, 1021 (S.D.N.Y.1990).[16] Thus, Universale "must set forth specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by pointing to evidence that indicates that these treaties were not formed. At this time, Universale cannot do so. The one affidavit submitted by Universale cannot be considered by this Court. *See, supra,* section II.A. Nor do the exhibits to this affidavit—which may be considered by this Court, *see Golotrade Shipping*, 706 F.Supp. at 217 n. 3—rebut Hancock's showing.

■ Hancock's fourth and ninth cause of action seek rescission and restitution of both the 1986 Treaty and the 1987 Treaty. Rescission is available to a contracting party if there has been a breach that is found to be "material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties making the contract." *Callanan v. Powers*, 199 N.Y. 268, 284, 92 N.E. 747, 752 (1910). *See also Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir.1980). The breach must go "to the root of the contract." *Direction Assoc., Inc. v. Programming & Systems, Inc.*, 412 F.Supp. 714, 719 (S.D.N.Y.1976).

Based on the evidence currently before the Court, Universale materially breached both the 1986 Treaty and the 1987 Treaty in two ways: by failing to provide to Hancock a letter of credit sufficient in amount to secure the losses and the IBNR losses, and by failing to pay losses under the two treaties since January, 1988. Taken together,[17] the failure to comply with these provisions strikes at the root of these two treaties. *Direction Associates*, 412 F.Supp. at 719. Accordingly, Hancock is entitled to restitution of the premiums paid less Universale's share of paid losses under the two treaties.

Universale's affirmative defenses concerning the 1986 and 1987 treaties must also be

1356 (all reasonable inferences are to be found in favor of the nonmovant). Moreover, an extension of time is particularly apt in the instant case in light of the fact that Hancock moved for summary judgment less than two months after Universale filed its answer.

**16.** While it is true that the law of the case doctrine is discretionary and thus gives a court the

power to reconsider its earlier rulings, *Ry. Labor Executives' Ass'n*, 759 F.Supp. at 1021, at this time this Court can find no reason to reverse its prior order.

**17.** The Court notes, but does not decide, that failing to comply with either of these provisions may also be considered a material breach.

considered. As the defendant, Universale bears the burden of persuasion on its affirmative defenses. Consequently, to succeed on its summary judgment motion Hancock must—for each affirmative defense—either point to evidence negating an essential element of a defense or show that Universale's evidence is insufficient to establish a required element of its case. *Celotex*, 477 U.S. at 331, 106 S.Ct. at 2556.

Universale's first four affirmative defenses [18] fail since they are premised on the argument that the two treaties do not exist. As noted above, this Court previously held that Hancock had made a *prima facie* showing that these treaties do exist, and to date Universale has failed to rebut this showing.

■ Universale's fifth affirmative defense, alleging estoppel, also fails.[19] To prevail under this theory, the party alleging estoppel must establish, among other things, that it had a "lack of knowledge and the means of acquiring knowledge of the real facts." *United States v. Bedford Assoc.*, 491 F.Supp. 851, 866–67 (S.D.N.Y.1980), *aff'd in pertinent part*, 657 F.2d 1300 (2d Cir.1981), *cert. denied*, 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982). Universale alleges that Hancock gave the impression that all other reinsurers participating in the two treaties were required to post a letter of credit inclusive of an IBNR component. Since these other reinsurers were not required to provide such a letter of credit, Universale alleges that Hancock violated the doctrine that requires participants in the same reinsurance agreement to be treated equally by the reinsured. However, all other reinsurers were underwriters at Lloyd's of London. Studley Aff. 9/23/92, ¶ 15, Exs. 5, 6. As such, they were not required to post letters of credit since they had established a trust fund that complies with New York state insurance regulations. N.Y.Comp.Codes R. & Regs. tit. 11, § 125.4 (1990); Studley Aff. 9/23/92,

¶¶ 13, 14. This arrangement is apparently well known in the reinsurance industry. Studley Aff. 7/17/92, ¶ 14. Consequently, Universale cannot claim that it did not have the means to acquire the real facts of this industry practice, *Bedford Assoc.*, 491 F.Supp. at 866–67, given that it is engaged in the reinsurance business. Universale thus cannot prevail on its estoppel affirmative defense.

Universale's affirmative defense of laches and statute of limitations also fail, since it has not offered any evidence to support its contention. *See, e.g., Ins. Co. of North America v. Misch*, 88 Civ. 3669, 1989 WL 73702, at *3, 1989 U.S. Dist. Lexis 7414, at *8–*9 (E.D.Pa.1989) (plaintiff's summary judgment motion granted after defendant failed to provide court with any factual support for his affirmative defenses). For the same reasons, Universale's remaining affirmative defenses also fail. *Id.*

Since Hancock has met its burden of production and also met or discharged its burden of persuasion on its fourth and ninth causes of action, the burden now shifts to Universale to show that there are genuine issues of material fact. "A party must either controvert the supporting affidavits or explain why it cannot present its version of the facts." *Belinsky v. Twentieth Restaurant, Inc.*, 207 F.Supp. 412, 413 (S.D.N.Y.1962). Universale cannot controvert Hancock's supporting evidence since this Court cannot consider the Karli affidavit. However, pursuant to Fed.R.Civ.P. 56(f), Universale has explained why it is unable to present evidence at this time. *See, supra,* section II.B.2. Accordingly, full consideration of Hancock's summary judgment motion is postponed.

A conference will be held shortly to establish a date by which Universale is to submit new opposition papers.[20] Thereafter, Hancock may submit reply papers.

---

18. These affirmative defenses allege the following: one, that the complaint fails to state a claim upon which relief can be granted; two, that the causes of action are barred by the statute of frauds; three, that the complaint should be dismissed because of the insufficiency of service of process; and four, that the complaint should be dismissed because of improper service of process. Am. Answer, ¶¶ 50–53.

19. Universale's fifth affirmative defense also alleges waiver. However, Universale does not argue that waiver applies to the 1986 and 1987 treaties.

20. If Universale needs additional time after the established date to submit its papers, it must provide a detailed affidavit in compliance with the requirements set forth in *Hudson River Sloop*

### C. New York Insurance Law section 1213

■ Hancock argues in the alternative that Universale's answer should be dismissed and a default judgment entered for its failure to comply with New York Insurance Law section 1213(c)(1). This section requires an alien insurer not authorized to do business in New York to deposit a security or post a bond sufficient to secure payment of a final judgment before it files any pleading, unless one of two exceptions that are not applicable here are met.[21] Compliance with section 1213(c)(1) is essentially a condition precedent to filing an answer. *See Dean Constr. Co. v. Agric. Ins. Co.*, 42 Misc.2d 834, 249 N.Y.S.2d 247, 248 (Sup.Ct. Nassau County), *aff'd*, 22 A.D.2d 82, 254 N.Y.S.2d 196 (2d Dep't 1964) (discussing statutory predecessor to section 1213). The section can be utilized by a non-resident corporation in New York as long as it is authorized to do business within the state. N.Y. Ins. Law § 1213(b)(1)(A). *See also Morgan v. American Risk Management, Inc.*, No. 89 Civ. 2999, 1990 WL 106837, at *5 (S.D.N.Y.1990). Moreover, for the reasons stated in *American Risk Management*, this Court holds that section 1213 applies to reinsurers.[22] *Id.* at *4–*5. *See also Curiale v. Phoenix Gen. Ins. Co.*, 83 Civ. 4687, 1992 WL 320535, 1992 U.S. Dist. Lexis 16399 (S.D.N.Y.1992); *American Centennial Ins. Co. v. Seguros La Republica, S.A.*, 90 Civ. 2370, 1992 WL 147626 (S.D.N.Y.1992).

■ Hancock alleges that Universale falls within the purview of section 1213(c)(1). Indeed, Universale is an "alien insurer." *See* N.Y. Ins. Law § 107(a)(5) (McKinney 1985);

Hancock's Compl. ¶ 6; Universale's Am. Answer, ¶ 5. Moreover, Universale is "unauthorized" since it does not hold a license to do insurance business in New York State. N.Y. Ins. Law § 107(a)(10) (McKinney 1985); Hancock's Compl. ¶ 6; Universale's Am. Answer, ¶ 5. Finally, Hancock can obtain the benefits of section 1213 since it is authorized to do business in New York. Hancock's Compl. ¶ 4.

Universale, however, argues that section 1213 does not apply to it because the statute "protects only New York residents in suits based on policies delivered to them in this state." Def.'s Mem. in Opp'n at 17. Universale cites *American Risk Management* for the proposition that section 1213 protects only New York residents. Universal misreads the facts of that case. *American Risk Management* involved a reinsurance company—chartered under the laws of Kentucky and authorized to do business in New York—that invoked section 1213 against various foreign and alien retrocessionaires.[23] *American Risk Management*, *1. The situation in the instant case is identical: Hancock is a corporation engaged in the insurance and reinsurance business that is licensed to do business in New York and seeks to invoke section 1213 against an alien retrocessionaire.

Universale's contention that delivery of a policy to the plaintiff in New York is required to invoke section 1213 is also misplaced. N.Y.Ins.Law § 1101(b)(2) specifically provides that such delivery is not essential before an entity is required to comply with section 1213.[24] Rather, a reinsurance trans-

---

*Clearwater*, 891 F.2d at 422. *See also Eastern Refractories Co., Inc. v. Forty Eight Insulations, Inc.*, 668 F.Supp. 183 (S.D.N.Y.1987).

**21.** N.Y. Ins. Law § 1213(c)(1) (McKinney 1985) provides:

Before any unauthorized foreign or alien insurer files any pleading in any proceeding against it, it shall either:
(A) deposit with the clerk of the court in which the proceeding is pending, cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure payment of any final judgment which may be rendered in the proceeding, but the court may in its discretion make an order dispensing with such deposit or bond if the

superintendent certifies to it that such insurer maintains within this state funds or securities in trust or otherwise sufficient and available to satisfy any final judgment which may be entered in the proceeding, or
(B) procure a license to do an insurance business in this state.

**22.** Indeed, N.Y. Ins. Law § 1101(b)(2)(G) expressly provides that section 1213 applies to those engaged in reinsurance transactions.

**23.** The Kentucky Commissioner of Insurance had commenced the action in his capacity as liquidator of the reinsurance company.

**24.** N.Y.Ins.Law § 1101(b)(1) provides that the delivery of an insurance policy to a corporation

action "effected by mail from outside [New York State] by an unauthorized foreign or alien insurer" triggers the section 1213 requirement. N.Y.Ins.Law § 1101(b)(2). Universale meets this test. Universale is an unauthorized alien insurer that engaged in a reinsurance transaction that was effected by mail from outside New York. Consequently, Universale was required to comply with section 1213.[25]

At this time, however, this Court will not strike Universale's amended answer and enter a default judgment in Hancock's favor. Instead, Universale shall comply with section 1213 within forty-five days of the date of this order. The amount of the bond that Universale shall post must be "sufficient to secure payment of any final judgment" that may be rendered in this proceeding. N.Y. Ins. Law § 1213(c)(1)(A). Plaintiff has demanded $1,194,642.00 under the 1985 Treaty, *see* Studley Aff. 7/17/92, ¶ 14, Ex. 7, and $2,452,582.00 under the 1986 Treaty and the 1987 Treaty, *see* Studley Aff. 9/23/92, ¶ 10, Ex. 4. Accordingly, Universale is required to post a bond totalling $3,647,224.00.[26] If Universale fails to post a bond for this amount within forty-five days, Hancock may renew its motion to strike the amended answer.

## III. CONCLUSION

For the reasons stated above, full consideration of Hancock's summary judgment motion is postponed. A conference will be held on May 13, 1993 at 10:00 A.M. in room 2203 to establish a deadline by which Universale is to submit new opposition papers. Prior to this conference, Universale shall commence discovery. After Universale has submitted these opposition papers, Hancock may file reply papers. In addition, Universale is directed to comply with N.Y. Ins. Law § 1213(c)(1) within forty-five days of the date of this order.

SO ORDERED.

---

authorized to do business in New York constitutes "doing business" within the state as provided in N.Y.CPLR § 302. However, the next section provides:

> Notwithstanding the foregoing, the following acts or transactions, if effected by mail from outside this state by an unauthorized or alien insurer duly licensed to transact the business of insurance in and by the laws of its domicile, shall not constitute doing business in this state, *but section [1213] of this chapter shall nevertheless be applicable to such insurers:*
>
> .    .    .    .    .
>
> (G) transactions with respect to the reinsurance of risks of authorized insurers....

N.Y. Ins. Law § 1101(b)(2) (McKinney 1985) (emphasis added).

**25.** This Court notes, but does not decide, that consenting to the jurisdiction of the New York courts may also be sufficient to require compliance with section 1213. *See, e.g., American Centennial Ins. Co. v. Seguros La Republica, S.A.*, 90 Civ. 2370, 1991 WL 60378, 1991 U.S. Dist. Lexis 4546 (S.D.N.Y.1991) and 1992 WL 147626, 1992 U.S. Dist. Lexis 8399 (S.D.N.Y.1992) (transacting business in New York, which thereby sustains personal jurisdiction pursuant to N.Y.CPLR § 302(a)(1) also triggers the requirement of a section 1213 bond).

**26.** Universale can also comply with section 1213 by depositing with clerk of the court cash or securities totalling $3,647,224.00. N.Y. Ins. Law § 1213(c)(1)(A).