Dhoruba Bin WAHAD, formerly Richard Dhoruba Moore, Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.

No. 75 Civ. 6203(MJL).

United States District Court, S.D. New York.

May 19, 1998.

Robert J. Boyle, New York City, Elizabeth M. Fink, Brooklyn, NY, for plaintiff.

Paul A. Crotty, Corporation Counsel of City of New York, By Ruby Bradley, Gail Donoghue, New York City, for defendants.

## OPINION AND ORDER

LOWE, Senior District Judge.

Before the Court is the motion of defendants City of New York and Michael Codd (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 56(e) ("Rule 56(e)"), to strike certain portions of the affidavit of Robert J. Bloom, Esq. ("Bloom Affidavit") submitted by Plaintiff Dhouruba Bin Wahad ("Plaintiff") in opposition to Defendants' motion for summary judgment. Specifically, Defendants ask the Court to strike paragraphs 8–44, 46–50, and 62–64 of the Bloom Affidavit. For the reasons stated below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

The Court assumes familiarity with the facts of this case, *see Wahad v. Federal Bureau of Investigation,* 132 F.R.D. 17 (S.D.N.Y.1990), and will briefly summarize the facts pertinent to this motion. Plaintiff commenced this action on December 10, 1975, alleging illegal surveillance and initiation of false criminal charges by past and present federal and local officials. Plaintiff claims that these actions, directed against him and the Black Panther Party, violated his rights under the United States Constitution and various federal statutes.

Plaintiff is a former leader of the New York chapter of the Black Panther Party. He was a member of the chapter from 1968 to 1971. In 1971, he was arrested for the attempted murder of two New York City police officers. In 1973, a jury convicted Plaintiff on two counts of attempted murder and felony possession of a weapon. The state court sentenced Plaintiff to 25 years in prison. In 1993, after Plaintiff had served 19 years in prison, his conviction was vacated by the New York State Supreme Court.

Plaintiff claims that, during his criminal trial, agents of defendant City of New York "suborned perjurious testimony[ ], withheld exculpatory evidence, and fabricated physical evidence" in violation of his due process rights under the Fifth and Fourteenth Amendments. *See* Fourth Am. Compl. ¶¶ 39–47, 67. Plaintiff alleges that the New York City Police Department ("NYPD") and the Office of the District Attorney of New York ("NYDA") committed these "illegal activities" pursuant to a "patter[n], practice, policy, and/or custom of the defendant City of New York." *Id.* ¶ 13.

## PROCEDURAL BACKGROUND

In late 1996, Defendants moved for summary judgment. Plaintiff submitted the Bloom Affidavit in support of his opposition papers. In May 1997, Defendants sought leave to: (1) conduct additional discovery of Bloom, and (2) supplement their reply papers filed in connection with their summary judgment motion with information obtained from the additional discovery. By order dated May 9, 1997, the Court granted Defendants' requests. *See* Order, dated May 9, 1997, at 1. In August 1997, Defendants submitted supplemental reply papers. Those papers not only addressed the additional discovery of Bloom, but also challenged the sufficiency of the Bloom Affidavit under Rule 56(e). By order dated September 2, 1997, the Court noted that it would consider the Rule 56(e) allegations as a separate motion and granted Plaintiff time to respond. *See* Order, dated September 2, 1997, at 1.

Bloom [1] is a criminal defense attorney who practiced in New York from 1966 until 1985. *See* Bloom Aff. ¶¶ 3–5. Bloom attests that, during the years he practiced criminal law in New York, nearly all of his cases involved the NYPD and the NYDA. *See id.* ¶¶ 7, 31. In his affidavit, Bloom recounts the details of those criminal cases and attests to the "illegal" practices of the NYPD and the NYDA. *See id.* ¶¶ 8–44, 46–50, 62–64.

## DISCUSSION

### I. *Legal Standards Governing Rule 56(e)*

 Rule 56(e) requires affidavits submitted in connection with a summary judgment motion to "be made on personal knowledge, ... set forth such facts as would be admissible in evidence, and ... show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). In accordance with this rule, affidavits must contain specific facts based on firsthand knowledge. *See, e.g., Union Ins. Soc'y v. William Gluckin & Co.,* 353 F.2d 946, 952 (2d Cir.1965); *United States Small Business Admin. v. Citibank, N.A.,* No. 94 Civ. 4259, 1997 WL 45514, at *3 (S.D.N.Y. Feb. 4, 1997) (striking affidavit where affiant made "no attempt to specify which assertions [were] based on [personal] knowledge or how he obtained such knowledge."). A "hearsay affidavit is not a substitute for the personal knowledge of a party." *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir. 1988); *see also H. Sand & Co., Inc. v. Airtemp Corp.,* 934 F.2d 450, 454–55 (2d Cir. 1991) (hearsay testimony that would be inadmissible at trial "may not properly be set forth in a Rule 56(e) affidavit"). Ultimate or conclusory facts and conclusions of law also cannot be used on a summary judgment motion. *BellSouth Telecomm., Inc. v. Grace & Co.,* 77 F.3d 603, 615 (2d Cir.1996). When an affidavit does not comply with these basic requirements, the offending portions should be disregarded by the court. *United States v. Alessi,* 599 F.2d 513, 514–15 (2d Cir.1979).

### II. *Defendants' Motion to Strike Portions of the Bloom Affidavit*

Defendants ask the Court to strike paragraphs 8–44, 46–50, and 62–64 of the Bloom Affidavit. Defendants contend that these paragraphs are fraught with improper legal conclusions, ultimate facts, conclusory statements, and inadmissible hearsay. *See* Defs.' Mem. at 3–7. The Court agrees.

### A. *Paragraph 8* [2]

 In paragraph 8 of his affidavit, Bloom testifies that the NYPD generally engaged in improper and unethical practices from the late 1960s until the 1980s. *See* Bloom Aff. ¶ 8. In interrogatory responses, Bloom identifies his "clients, documentation," and "third party witnesses" as his source of knowledge about the NYPD's practices. Bloom Interrogs. Resp. 4(1)(b). The Court will disregard paragraph 8 of the Bloom Affidavit, as it is conclusory and based on inadmissible hearsay. *See Bruchman v. Standard Chartered Bank, PLC,* 997 F.Supp. 481, 487–88 (S.D.N.Y.1998) (striking hearsay statement in affidavit under Rule 56(e)).

### B. *Paragraph 9* [3]

 In paragraph 9, Bloom testifies about the NYPD and the NYDA's practice of

---

**1.** Bloom served as Plaintiff's counsel in this case until May 1997. Bloom sought leave to withdraw his representation because his "testimony might be necessary at trial." *See* 4/17/97 Bloom Decl. ¶ 14. By order dated May 9, 1997, the Court granted Bloom's motion to withdraw from the case. *See* Order, dated May 9, 1997, at 2.

**2.** Paragraph 8 of the Bloom Affidavit provides: "In the nearly twenty years I practiced criminal law (primarily in New York City), I found that in a high percentage of serious criminal cases in which I participated, members of the NYPD engaged in *deceptive, dishonest, brutal, and unethical* conduct. I also observed similar conduct,

although less frequently, in petty cases." Bloom Aff. ¶ 8.

**3.** Paragraph 9 of the Bloom Affidavit reads: "Often the conduct and practice of NYPD officers involved the intentional withholding of important exculpatory information by the NYPD and/or by the prosecutor. This pattern of conduct by NYPD officers took many forms: [f]ailure to prepare written memoranda of witness statements which were exculpatory as to one or more defendants; [f]ailure to disclose exculpatory information to the prosecutor; [f]ailure to properly voucher *and/or safeguard evidence which was* exculpatory; [s]ubornation of perjury; [t]hreats

"withholding exculpatory information" and "suborning perjury." Bloom Aff. ¶ 9. Bloom identifies "witnesses who exculpated [his] clients" and "independent investigation" as his source of knowledge for this information. *See* Bloom Interrogs. Resp. 5(1)(k), 10(1)(k). The Court refuses to consider this testimony because it is based on inadmissible hearsay. Moreover, the Court will disregard Bloom's legal conclusions, namely, that the NYPD and the NYDA withheld exculpatory evidence and suborned perjury. *See Schwapp v.* *Town of Avon,* 118 F.3d 106, 111 (2d Cir. 1997) (finding legal conclusion that plaintiff "work[ed] in a hostile or abusive working environment" inadmissible under Rule 56(e)). Accordingly, the Court strikes paragraph 9 of the Bloom Affidavit.

C. *Certain Portions of Paragraphs 10, 13, 14, 15, 18, 19, 20, 29, 30, 32, 33, 35, 39, 47, 50, 62, and 63*[4]

 In these paragraphs, Bloom asserts that employees of the NYPD and the

to physically harm witnesses, or to bring unwarranted prosecutions against them, if they did not tell the NYPD what the officers wanted them to say; [u]nauthorized, and often undisclosed, promises and provision of benefits to a witness if the witness told the police what the police wanted the witness to say, often in disregard of the truth; [p]reparation of false affidavits; [p]erjury by police officers as witnesses." Bloom Aff. ¶ 9.

4. Defendants challenge the sufficiency of the following portions of paragraphs 10, 13, 14, 15, 18, 19, 20, 29, 30, 32, 33, 35, 39, 47, 50, 62, and 63 of the Bloom Affidavit: "10. Despite the frequency of this kind of conduct, seldom if ever would the offending police officers be punished in any way. They were free to continue to perform as they wished without fear of censure or punishment. 13. That officer was caught on the record committing the crime of perjury, but, upon information and belief, was not prosecuted for his blatant crime by the District Attorney or terminated by the NYPD. 14. ... but these officers were not punished in any way by the NYPD. In fact, they were treated as heroes by their supervisors. 15.... These officers were never punished for their misconduct. 18. The investigating police officers who participated in keeping this exculpatory information from the defense were never prosecuted or in any way punished for their misconduct by the NYPD. 19. In *People v. Hilton,* a 1974 attempted murder case prosecuted in Bronx Supreme Court, NYPD officers withheld exculpatory information and committed perjury at trial. The lies were so blatant that the jury quickly acquitted my client of all charges. None of the officers who engaged in this misconduct was prosecuted by the DA or punished in any way by the NYPD. 20.... These officers were never disciplined by the NYPD for this conduct or for other misconduct in which they had engaged. 29. No punishment was ever imposed upon any of the investigating officers in this case who were responsible for attempting to conceal the fact that the only non-police weapon involved in this case was found under the deceased, Mr. Russell.... 30. I was personally involved in a number of other cases involving the withholding of exculpatory evidence by members of the NYPD between 1966 and 1985.

I am aware of no circumstances wherein the offending officers were reprimanded, prosecuted, censured, or in any way punished for their misconduct. In fact, it was and is clear that misconduct by NYPD officers, including the withholding of exculpatory information, was rewarded and celebrated by the officers and their superiors, especially if the accused was convicted. 32. In *People v. Shakur, et al,* (the Panther 21 case), numerous instances of police perjury were exposed during the trial. For example, an officer named McKenzie was caught red-handed in the fabrication of a tale that he had been shot at [sic] close range. Despite the clear perjury, the officer was never punished by the NYPD, nor was he ever prosecuted by the NYDA. 33.... This outrageous behavior has not been punished by the NYDA or anyone else to this day. 35.... No assistant district attorney was ever disciplined for this conduct. 39. Needless to say, no-one in the DA's office was ever reprimanded or punished in any way for this or any other failure to disclose exculpatory information in *People v. Bottom, et al.* 47. Neither Keenan, nor Lehner, nor ADA Frank Cryan (who had been prosecuting the case prior to Lehner) was ever in any way punished by the bureau, by the DA's office, or by anyone. Nobody was fired. Nobody was demoted. Nobody was suspended. Nobody was docked any pay. And, of course, nobody was prosecuted for this blatantly criminal behavior. Fortunately for Mr. Vickers, we were able to expose the gross misconduct of the police and the DA, and the jury acquitted Mr. Vickers. 50. Once again, members of the DA's homicide bureau engaged in criminal and unethical activities and were not in any way punished for that behavior. Neither Dermody or Keenan was ever censured within the DA's office, and, of course, neither was accused of the crime he had committed. 62. Upon information and belief, there was no punishment or censure of Keenan for his perjury and/or his withholding of critical exculpatory information. Nor was there any punishment or censure for Terrence O'Reilly or Roderick Lankler, the other Assistant DA's who were involved in the case. 63. There are other illustrations in my personal experience of the NYPD and the NYDA withholding materials which

NYDA were never punished for their acts of "misconduct," including perjury and the withholding of exculpatory evidence. *See* Bloom Aff. ¶¶ 10, 13, 14, 15, 18, 19, 20, 29, 30, 32, 33, 35, 39, 47, 50, 62, 63. The Court will disregard Bloom's improper legal conclusions that the NYPD and the NYDA committed perjury and withheld exculpatory evidence. *See Schwapp*, 118 F.3d at 111. The Court also refuses to consider Bloom's speculation about the disciplinary practices of the NYPD and the NYDA. Bloom, as a criminal defense attorney, could not have personal knowledge of the NYPD or the NYDA's disciplinary history. *See Larouche v. Webster*, 175 F.R.D. 452, 457 (S.D.N.Y.1996) (Lowe, J.) (records supervisor employed by FBI could not have personal knowledge of FBI's reasons for conducting investigation of plaintiffs). Accordingly, the Court strikes the aforementioned portions of paragraphs 10,[5] 13, 14, 15, 18, 19, 20,[6] 29, 30, 32, 33, 35, 39, 47,[7] 50, 62, and 63 of the Bloom Affidavit.

### D. *Paragraph 11*

█ In paragraph 11 of his affidavit, Bloom asserts: "[i]n the first years of my

practice, I noted that it was common for NYPD officers to be given credit for arrests in which they had no participation. The issues that concerned the officers were overtime and days off, rather than fairness and justice." Bloom Aff. ¶ 11. Bloom identifies "reports," independent investigation, and courtroom testimony as his source of information for these statements. *See* Bloom Interrogs. Resp. 14(1). Bloom's testimony constitutes inadmissible hearsay and conclusory speculation about the intentions and practices of NYPD officers. Accordingly, the Court strikes paragraph 11 of the Bloom Affidavit.

### E. *Paragraph 12: People v. Cherry*

█ In paragraph 12 of his affidavit, Bloom asserts that: "[i]n fact, the officer continued to lie under oath as a witness even after being shown his conflicting affidavits." Bloom Aff. ¶ 12. The Court will disregard this portion of paragraph 12 of the Bloom Affidavit, as it constitutes a conclusory statement.[8]

should have been provided by law to the defense. I ca[n] recall not one single occasion in which these agencies withheld such information wherein the offending officer or prosecutor was in way punished for his or her misconduct." Bloom Aff. ¶¶ 10, 13, 14, 15, 18, 19, 20, 29, 30, 32, 33, 35, 39, 47, 50, 62, 63.

5. The Court also strikes the remaining portion of paragraph 10 of the Bloom Affidavit: "In some instances, including those discussed in this Declaration, the misconduct of the NYPD and/or the NYDA was discovered prior to or during the trial. Often this discovery led to the acquittal of the accused. As a result, these cases do not appear anywhere as recorded cases. As attorney for defendants in these cases, I have personal knowledge of the events set forth herein." Bloom Aff. ¶ 10. In interrogatory responses, Bloom identifies "reports," "independent investigation," and courtroom testimony as his source of information for this statement. Bloom Interrogs. Resp. 14(1). This testimony constitutes inadmissible hearsay and will be disregarded by the Court.

6. The Court also strikes the remaining portion of paragraph 20 of the Bloom Affidavit: "In *People v. Cumberbatch*, a Bronx murder case prosecuted in 1973, investigating NYPD detectives literally tortured my client as he lay wounded in the hospital shortly after the incident. They also threatened his life. Mr. Cumberbatch was eventually (after certain charges were dismissed on

the merits on appeal) convicted only of possession of a weapon." Bloom Aff. ¶ 20. Bloom attributes his source of knowledge for this testimony to "[his] client, examination of officers, and independent investigation corroborating [his] client's account." Bloom Interrogs. Resp. ¶ 20(1)(j). Because there is no way to ascertain which portion of this testimony is based on the inadmissible hearsay of Bloom's client, as opposed to the potentially non-hearsay account of a NYPD police officer, the Court considers this testimony insufficient under Rule 56(e). *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.1988) (refusing to consider testimony in affidavit because it was impossible to determine which portion of testimony was based on personal knowledge, as opposed to information and belief).

7. The Court also strikes the remaining portion of paragraph 47, which reads: "Fortunately for Mr. Vickers, we were able to expose the gross misconduct of the police and the DA, and the jury acquitted Mr. Vickers." This testimony comprises conclusory statements and inadmissible hearsay.

8. In paragraph 12 of his affidavit, Bloom also asserts that "[t]he exculpatory information (that the officer had not in fact arrested my client at all, but was 'given' the arrest by other officers) was never disclosed to the defense." The Court

438

### F. Paragraphs 14–15 [9]: People v. Cleveland Davis

■■■■■ In his affidavit, Bloom attests to the alleged 1978 beating of his client, Cleveland Davis ("Davis"), by NYPD officers. *See* Bloom Aff. ¶ 14. Bloom also testifies about promises made to prosecution witnesses by NYPD officers during the criminal prosecution of Davis. *See id.* ¶ 15. Bloom identifies his source of information for this testimony as his client, "investigation," "documents ultimately produced," an EMS ambulance attendant who testified at trial, and "cross-examination of police officers and civilian witnesses." Bloom Interrogs. Resp. ¶¶ 15(1)(i), (m), (p). Because there is no way to ascertain which portion of this testimony is based on inadmissible hearsay (*i.e.*, Bloom's client, documents, cross-examination of civilian witnesses) as opposed to potentially non-hearsay sources (*i.e.*, an EMS technician or a NYPD police officer), the Court considers this testimony insufficient under Rule 56(e). *See Sellers*, 842 F.2d at 643.[10] Accordingly, the

Court will disregard paragraphs 14 and 15 of the Bloom Affidavit.

### G. Paragraphs 16 and 17 [11]: People v. Robinson

■■■■■ The Court strikes paragraph 16 and the following portion of paragraph 17 of the Bloom Affidavit: "[a] panel of the Appellate Division, 2d Department, set aside the conviction, finding that the 'prosecution' had withheld this critical exculpatory information. *People v. Robinson*, 133 A.D.2d 859, 520 N.Y.S.2d 415 (2d Dept.1987)." Bloom Aff. ¶ 17. Bloom identifies his source of information for this testimony as his "participation in the proceedings" and a "conversation with Robert J. Boyle, Esq." who served as counsel for Robinson's co-defendant. Bloom Interrogs. Resp. 16(1)(j), (k). Once again, Bloom's testimony fails the personal knowledge requirement of Rule 56(e), as it is based on inadmissible hearsay and asserts legal conclusions. Accordingly, the Court will disregard paragraph 16 and the aforementioned portion of paragraph 17 of the Bloom Affidavit.[12]

---

will disregard Bloom's characterization of the information as "exculpatory" because it constitutes a legal conclusion. The Court will otherwise consider this portion of the Bloom Affidavit.

**9.** Paragraphs 14 and 15 of the Bloom Affidavit state: "14. In the case of *People v. Cleveland Davis*, prosecuted in Kings County Supreme Court, my client, Mr. Davis, was accused of killing two NYPD officers and a civilian during an incident in 1978. When he was arrested, he was severely beaten in the rear of an ambulance by the two arresting officers on the way to the hospital. The officers forced the ambulance attendant to ride in front with the driver, while they rode in the back with my client. They fractured his skull in seven places while he was semi-conscious and handcuffed behind his back. My client came very close to death ... 15. During the prosecution of this case, I was fortunate enough to discover that officers investigating the case promised and provided particular benefits to alleged witnesses to the incident and failed to disclose the fact of these benefits to the defense.... After three trials, the first two terminating in hung jury mistrials, Mr. Davis was acquitted." Bloom Aff. ¶¶ 14–15.

**10.** In his brief, Plaintiff attributes Bloom's knowledge of the 1978 "beating" of his client to his personal observation that Davis had every "bone in his face broken." *See* Pl.'s Opp'n Mem. at 9. According to Plaintiff, Bloom has first-hand knowledge of his own "observations." *Id.* Contrary to Plaintiff's argument, Bloom's observa-

tion of his client's face does not render him competent to testify about the alleged *beating* of Davis. Thus, Plaintiff's argument lacks merit.

**11.** Paragraphs 16 and 17 of the Bloom Affidavit provide: "16. In the case of *People v. Robinson*, prosecuted in 1983, a Queens County Supreme Court case involving the shooting of an off duty NYPD officer, the police withheld critical exculpatory evidence from the defense. A witness had told the police that particular named men, not the two men who had been arrested and accused, had committed the crime. The witness told the police that he had seen and heard particular conduct and that he had been given certain information by the actual perpetrators just after the incident (a robbery of an after-hours club). The witness provided details of the crime to the police which only the perpetrators could have known. 17. The prosecutor claimed that the investigating NYPD officers never provided the exculpatory information to him. A panel of the Appellate Division, 2d Department, set aside the conviction, finding that the 'prosecution' had withheld this critical exculpatory information. *People v. Robinson*, 133 A.D.2d 859, 520 N.Y.S.2d 415 (2d Dept.1987)."

**12.** The Court will consider the following portion of paragraph 17 of the Bloom Affidavit: "The prosecutor claimed that the investigating NYPD officers never provided exculpatory information to him." *See* Bloom Aff. ¶ 16. Bloom attributes

H. *Paragraphs 21–29 and 40–47: People v. Vickers*

1. *Paragraph 21 and a Portion of Paragraph 40*[13]

▮ In paragraphs 21 and 40 of his affidavit, Bloom asserts that the NYPD and the NYDA conspired to "conceal" exculpatory information in *People v. Vickers*. *See* Bloom Aff. ¶¶ 21, 40. Bloom's testimony improperly asserts a legal conclusion, namely, the NYDA and the NYPD withheld exculpatory evidence. Such testimony also amounts to pure speculation about a conspiracy between the NYPD and the NYDA. Thus, the Court strikes paragraph 21 and a portion of paragraph 40 of the Bloom Affidavit.

2. *Paragraphs 22–26 and the Remaining Portion of Paragraph 40*[14]

▮ In these paragraphs, Bloom attests to events in April 1971 that led to the NYPD's arrest of Anthony White ("White") and Robert Vickers ("Vickers"). *See* Bloom Aff. ¶¶ 22–26, 40. According to Bloom, during the April 1971 incident, NYPD officers forced Vickers, White, and Harold Russell ("Russell") "at gunpoint to put their hands on [a] wall," resulting in a gun fight between Russell and the officers. *See id.* ¶ 22. Bloom attributes his source of information for this testimony to "[i]nvestigation, court documents, [and his] participation in the proceedings." Bloom Interrogs. Resp. ¶ 21(1)(j). The Court will disregard this testimony, as it is based on inadmissible hearsay.[15]

3. *Paragraphs 27, 29, 41, 43, and 44*[16]

this information to "the DA['s] admi[ssion at the CPL 440.10 proceeding] that the Bowman information and other Rosario material had not been disclosed." Bloom Interrogs. Resp. 16(1)(i). This testimony is admissible as a non-hearsay admission of a party opponent under Rule 801(d)(2)(D).

13. Paragraphs 21 and 40 of the Bloom Affidavit read: "21. In the case of *People v. Vickers*, prosecuted by the NYDA homicide bureau in New York County Supreme Court, the NYPD and the NYDA homicide bureau worked together to conceal extremely critical exculpatory information from the defense. 40. In *People v. Vickers*, discussed above, the NYDA homicide bureau committed the most outrageous violation of the rule that requires disclosure of exculpatory information." Bloom Aff. ¶¶ 21, 40.

14. Defendants challenge the sufficiency of the following portions of paragraphs 22–26 and 40: "22. In April of 1971, two NYPD officers with weapons drawn forced three men they suspected were members of the Black Panther Party into a residential hallway. The three men, Harold Russell, Anthony White, and Robert Vickers, were forced at gunpoint to put their hands on the wall in the hallway of the building. At some point, Russell drew a weapon, and he (and he alone of the three men) and the two officers exchanged gunfire. All five men were hit with bullets. 23. The two officers were wounded, but not seriously. They both recovered from their wounds. Ballistics tests confirmed that both were shot with bullets from the same .45 caliber handgun. 24. Vickers was hit in the arm as he kept his hands up on the wall, and he was able to flee from the building. 25. White was seriously wounded in the stomach by a bullet from one of the officers. He was eventually arrested in the

building and taken to a hospital for treatment. 26. Russell fled to the basement of the building after being shot by the officers. He was found dead in the basement. Found underneath Russell's body was the .45 caliber handgun which had fired the bullets that hit the officers. Ballistics evidence demonstrated that, other than police weapons, this .45 was the only weapon fired and/or recovered in connection with the incident. 40. As noted above, two NYPD officers illegally forced three men into a hallway in Harlem. One of the three men, Harold Russell, had a weapon, which he fired at the officers. There was no indication of any kind that the other two men, White and Vickers, even knew that Russell had a weapon. Nor was there any evidence that either White or Vickers was armed or did anything at all other than run from the officers." Bloom Aff. ¶¶ 22–26, 40.

15. Plaintiff contends that this testimony is not offered for the truth of what happened in April 1971, but to prove that the prosecution's theory in its case against Vickers was that "Vickers was the shooter and that no weapon was recovered." Pl.'s Opp'n Mem. at 10. Paragraphs 22–26 and 40, however, do not reflect the theory of the prosecution's case against Vickers. Instead, the testimony is a hearsay account, based on information other than personal knowledge, of an incident between three individuals, including Vickers, and NYPD officers that resulted in the shooting of two police officers. The Court will therefore disregard this testimony.

16. Defendants challenge the sufficiency of the following portions of paragraphs 27, 29, 41, 43, and 44 of the Bloom Affidavit: "27. The officers who investigated this incident *failed to voucher*

■ In these paragraphs, Bloom testifies about the NYPD's recovery of a handgun from underneath Russell's body, its "fail[ure] to voucher the weapon," and the NYDA's subsequent "surreptitious[ ] conceal[ment]" of the weapon in its private safe. Bloom Aff. ¶¶ 27, 29, 41, 43, 44. Bloom attributes his source of knowledge for this testimony to "[i]nvestigation, court documents," his "participation in the proceedings," a document prepared by a NYPD sergeant ("Document"), a New York State Supreme Court judge's order to disclose the Document, and

> the weapon recovered from the hand of Russell and failed to prepare a report detailing the location of the weapon, and the recovery of the weapon was concealed from the defense. The investigating officers, instead of vouchering and lodging the weapon with the police property clerk, gave the weapon to the NYDA homicide bureau (among them the same prosecuting officials who participated in the fabricated case against plaintiff Bin Wahad which is the subject of the instant litigation). The homicide bureau surreptitiously concealed the weapon in its private safe and failed to inform defense counsel of the recovery of the weapon, the failure of the police to properly voucher the weapon with the police property clerk, and the highly exculpatory facts involving the recovery of the weapon (as it related to the prosecutions of White and Vickers). 29. . . . These officers failed to voucher the weapon, and failed to note in any 'DD–5' reports (detective division follow-up reports) even the *fact* that the .45 was found, much less *where* it was found. 41. After the shooting was over, Russell was found dead in the basement of the building. The police recovered a .45 caliber handgun underneath the body of Russell. The police, instead of properly vouchering and lodging the weapon with the police property clerk, gave it to one or more members of the NYDA's homicide bureau. 43. The DA, therefore, attempted to bury the gun and the facts of its recovery. The DA never informed me of the existence of the weapon nor of the circumstances of its recovery, despite its plain *Brady* obligation to do so and despite my frequent requests for exculpatory information. It was not until the first trial judge finally insisted, after weeks of stalling by Assistant DA Robert Lehner, that *all* prior statements by witnesses be disclosed, that the existence of the weapon was revealed. The only written mention of Russell's gun was contained in one of the documents wrenched from Lehner, a 'Request for Departmental Recognition' submitted by one of the officers. 44. . . . The weapon was given to the bureau and *kept in the safe of the bureau* for some two years before Vickers was tried." Bloom Aff. ¶¶ 27, 29, 41, 43, 44.

17. Plaintiff argues that these paragraphs "are admissible because they are based upon . . . ad-

"ADA Cryan and/or ADA Lehner['s] disclos[ure] that [the] gun was in the Homicide Bureau's safe." Bloom Interrogs. Resp. ¶ 21(1)(j); Bloom Aff. ¶ 29 n. 3. Bloom's testimony comprises inadmissible hearsay, conclusory statements, and speculation.[17] Therefore, the Court will disregard paragraphs 27, 29, 41, 43, and 44.

### 4. Paragraphs 28 and 42[18]

■ In these paragraphs, Bloom attests to the NYPD and the NYDA's "reasons" for their "criminal and unethical action" in *Peo-*

missions by the NYPD and NYDA." Pl.'s Opp'n Mem. at 11. In support of this argument, Plaintiff points to Bloom's assertion that "ADA Cryan and/or ADA Lehner disclose[d] that the gun was in the Homicide Bureau's safe." *Id.* Bloom, however, also attributed his knowledge of the gun's whereabouts to a variety of hearsay sources, including court documents and his "investigation." *See* Bloom Interrogs. Resp. 21(1)(j). Thus, the Court cannot determine whether Bloom's knowledge stems from inadmissible hearsay sources or a possibly non-hearsay source (*i.e.*, the non-hearsay admission of a NYDA official). Such testimony is not based on personal knowledge and, therefore, is inadmissible under Rule 56(e). Moreover, even if the Court could discern the source of Bloom's knowledge, Bloom testifies about the NYPD and the NYDA's improper actions and motives (*i.e.*, the NYPD's "failure to voucher the weapon," its "giv[ing]" the weapon to the NYDA," and the NYDA's "surreptitious concealment" of the weapon), *not* the NYDA's actual disclosure of the gun's location. Accordingly, Plaintiff's argument is unpersuasive.

18. Paragraphs 28 and 42 of the Bloom Affidavit provide: "28. Obviously, the police were hoping to prosecute the survivors (White and, if he were to be arrested, Vickers). The police wanted to be free to 'relocate' the weapon to the proximity of either White or Vickers if and when either of the two were prosecuted. The NYPD officers received all the [sic] help they needed from their co-conspirators, the NYDA homicide bureau. 42. The reasons for the police action and the further criminal unethical action of the NYDA were obvious. The possessor of the gun, and the only one who fired at the police, was dead and, of course, could not be prosecuted. The DA's office well knew that White and/or Vickers would claim that they did nothing other than being unlawfully forced to enter a residential hallway by the police. And the DA knew that proof that the only non-police weapon fired or recovered was underneath the body of Mr. Russell would fatally undermine any claim that White and/or Vickers had shot at the officers." Bloom Aff. ¶¶ 28, 42.

*ple v. Vickers.* Bloom Aff. ¶¶ 28, 42. Bloom, a criminal defense attorney, cannot have personal knowledge of the motivations and goals of the NYPD and the NYDA. *See Larouche,* 175 F.R.D. at 457; *John Hancock Property and Casualty Ins. Co. v. Universale Reinsurance Co., Ltd.,* 147 F.R.D. 40, 44–45 (S.D.N.Y.1993) (company's managing director could not testify, under Rule 56(e), to "what [company's] former employees would or would not have done" during negotiations). Thus, the Court finds that paragraphs 28 and 42 should be stricken.

### 5. *Paragraph 44*

■ In paragraph 44, Bloom asserts that "[t]he most damning fact regarding the conduct of the DA's homicide bureau was that the bureau met every Friday to discuss their cases.... Th[e] intentional concealment of the weapon and the facts surrounding its use and its recovery was accomplished during the period that Assistant DA John Keenan was the head of the homicide bureau." Bloom Aff. ¶ 44. Bloom states no basis for any personal knowledge of the NYDA's meeting schedule or its intentions regarding the weapon. Accordingly, the Court strikes paragraph 44 of the Bloom Affidavit.

### 6. *Paragraph 46*[19]

■ In paragraph 46 of his affidavit, Bloom suggests "two possib[le]" scenarios concerning the extent of the NYDA Homi-

cide Bureau's ("Bureau") knowledge of the "conceal[ment of] the weapon" in the *Vickers* case and who in the Bureau participated in the "misconduct and unethical behavior." Bloom Aff. ¶ 46. This testimony constitutes pure speculation. The Court therefore strikes paragraph 46 of the Bloom Affidavit.

### I. *Paragraph 31*[20]

■ In paragraph 31 of his affidavit, Bloom testifies about the "criminal defense bar['s]" impression that certain bureaus of the NYDA's office engaged in unethical behavior such as withholding exculpatory evidence, intimidating witnesses, and bribery. Bloom Aff. ¶ 31. Bloom attributes his source of information for this testimony to his "participation in proceedings" and "conversations with colleagues." Bloom Interrogs. Resp. 23(1)(j). The Court will disregard this testimony because it constitutes inadmissible hearsay and improper legal conclusions.

### J. *Paragraph 33*[21]

■ In paragraph 33 of his affidavit, Bloom attests to alleged *ex parte* meetings between a New York State Supreme Court judge and prosecutors during the case of *People v. Shakur.* Bloom Aff. ¶ 33. Bloom identifies "Former ADA Lawrence Hochheiser" as his source of information for his testimony. Bloom Interrogs. Resp. 25(1)(c). The Court will disregard this testimony, as it constitutes inadmissible hearsay.[22]

---

**19.** Paragraph 46 of the Bloom Affidavit reads: "The misconduct of the NYDA homicide bureau is clear, whether or not Keenan and the other members of the bureau specifically discussed the 'concealed weapon' in the *Vickers* case. There are two possibilities: (a) those in the homicide bureau who had knowledge of the weapon *did* discuss it in bureau meetings during the two years between the incident and the *Vickers* trial. If that is the case, then everyone in the bureau who heard the discussion engaged in misconduct and unethical behavior; (b) those who had knowledge of the weapon concealed it from others in the bureau, and it is only they whose ethics and morality are delinquent." Bloom Aff. ¶ 46.

**20.** Paragraph 31 of the Bloom Affidavit provides: "[d]uring the years I practiced in New York County, I was involved in a number of cases where my adversary was the office of NYDA. It soon became clear amongst the criminal defense bar that certain bureaus of the NYDA's office routinely failed to provide both 'Rosario materi-

al' (prior statements of prosecution witnesses) and 'Brady' (exculpatory) material and routinely engaged in other acts of misconduct. Indeed the homicide bureau of the NYDA's office became *infamous for its misconduct regarding disclo*sure, intimidation of witnesses, effective bribery of witnesses, and other misconduct. Some circumstances of which I have personal knowledge are as follows[.]" Bloom Aff. ¶ 31.

**21.** Paragraph 33 of the Bloom Affidavit reads: "[f]urthermore, after the trial [in *People v. Shakur*], the attorneys learned that virtually every day after court had recessed for the afternoon, the prosecutor went to chambers of the trial judge, John Murtagh, to discuss the case (ex parte, of course) and to discuss the scenario for the following day." Bloom Aff. ¶ 33.

**22.** Plaintiff argues that paragraph 33 constitutes a non-hearsay admission of a party opponent under Rule 801(d)(2)(D). *See* Pl.'s Opp'n Mem.

### K. Paragraphs 34–38: People v. Bottom

#### 1. Paragraph 34[23]

■ In paragraph 34 of his affidavit, Bloom asserts that "gross misconduct by the NYDA was the hallmark of the prosecution [in *People v. Bottom*]." Bloom Aff. ¶ 34. The Court finds this conclusory statement incompatible with the requirements of Rule 56(e). Accordingly, the Court will disregard this portion of paragraph 34 of the Bloom Affidavit.

#### 2. Paragraph 35

■ In paragraph 35 of his affidavit, Bloom attests that: "[m]isconduct, including perjury and failure to disclose exculpatory information regarding ballistics evidence, has been uncovered and was the subject of a hearing in federal court. Both the NYPD and the NYDA were involved in the concealment of the exculpatory ballistics evidence." Bloom Aff. ¶ 35. Bloom attributes his knowledge for this testimony to: (1) his "personal [observation] of the manner in which [the NYPD officer involved in the case] testified," (2) his "numerous conversations with attorneys who represented the defendants in post-conviction proceedings," and (3) the decision by a federal district court judge that the NYPD officer committed perjury. Bloom In-

terrogs. Resp. 26(1)(c), (d). Once again, Bloom's statements constitute inadmissible hearsay and improper legal conclusions. Accordingly, the Court will disregard paragraph 35 of the Bloom Affidavit.

#### 3. Paragraph 36[24]

■ In this paragraph of his affidavit, Bloom attests that the NYPD and the NYDA provided "benefits" to witnesses in exchange for "false evidence" in *People v. Bottom*. Bloom Aff. ¶ 36. Bloom attributes his source of knowledge for this testimony to "[c]onversations with [the] attorney representing defendants in motions for post-conviction relief." Bloom Interrogs. Resp. 27(1)(f). Bloom also asserts that he "may have seen the FBI report memorializing the promise." *Id.* To the extent that Bloom "may" have seen a FBI report, the Court cannot discern which portion of this testimony is based on the inadmissible hearsay of an "attorney," as opposed to the possibly admissible hearsay of a FBI report. *See Sellers*, 842 F.2d at 643. Accordingly, the Court strikes paragraph 36 of the Bloom Affidavit.

#### 4. Paragraph 37[25]

■ In paragraph 37 of his affidavit, Bloom asserts that: "[r]egarding other mis-

at 12. Rule 801(d)(2)(D) provides that a statement is admissible as an admission if made "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D). Here, there is no evidence that "Former ADA Lawrence Hochheiser" worked for the NYDA when he relayed the information about the alleged *ex parte* meetings to Bloom. Thus, Plaintiff has not established that the alleged statement was made by an employee "during the existence of the employment relationship." Cf. *Thomas v. Stone Container Corp.*, 922 F.Supp. 950, 956 (S.D.N.Y.1996) (finding statement of unidentified employee inadmissible under Rule 801(d)(2)(D) because there was no evidence that "statement was made by a person authorized to make it or that it concerned a matter within the scope of the declarant's employment."). Thus, paragraph 33 is not admissible under Rule 801(d)(2)(D).

23. Paragraph 34 of the Bloom Affidavit reads: "In *People v. Bottom, et al.*, prosecuted personally by Assistant DAs John Keenan, Roderick Lankler and, at trial, Robert Tannenbaum, gross misconduct by the NYDA was the hallmark of the prosecution. That case involved the May 21, 1971, murder of police officers Piagentini and

Jones. It was investigated and prosecuted by the same assistant district attorneys who prosecuted Mr. Bin Wahad for the May 19, 1971 shooting of officers Curry and Binetti." Bloom Aff. ¶ 34.

24. Paragraph 36 of the Bloom Affidavit provides: "[i]t has also been learned that certain witnesses were provided undisclosed benefits by the prosecution (NYPD and the homicide bureau of the NYDA's office) in order to secure what appears to be false evidence during the two trials that took place. One illustration of the undisclosed benefits involved two prosecution witnesses, Jacqueline Tabb and Linda Torres, both of whom had pending criminal charges at the time of the prosecution of the case. Both witnesses swore that the prosecution had made no promises to them regarding these pending cases. But FBI documents (which were uncovered in the instant case) reveal that the NYDA promised the witnesses that all charges against them would be dropped in exchange for their testimony." Bloom Aff. ¶ 36.

25. Paragraph 37 of the Bloom Affidavit reads: "[r]egarding other misconduct, in the early stages of the pre-trial proceedings, there were

conduct, in the early stages of the pre-trial proceedings, there were newspaper reports that a certain person, Clarence Lee, had seen the incident, and that he had named the perpetrators when interviewed by the prosecution." Bloom Aff. ¶ 37. This statement constitutes inadmissible hearsay and will be disregarded by the Court.

### 5. *Paragraph 38*[26]

The Court strikes the following portion of paragraph 38: "The Court (Justice Burton Roberts) rejected Keenan's absurd claims and directed disclosure. (*People v. Bottom*, 76 Misc.2d 525, 351 N.Y.S.2d 328 (1974) [NY County, 1974]). It was clear that Keenan simply grasped at these ludicrous arguments to justify his unethical failure to comply with basic legal principles." Bloom Aff. ¶ 38. This testimony comprises inadmissible hearsay and pure speculation. Accordingly, this portion of paragraph 38 is stricken.

### L. *Paragraph 48*

In paragraph 48 of his affidavit, Bloom asserts: "[s]ome time during the period when I was involved in a number of cases against the NYDA's homicide bureau, Matthew Salko, an attorney I knew who prac-

ticed in New York County, approached me to sympathize with my having to deal with the constant and notorious dishonesty and misconduct of the NYDA's homicide bureau, and with John Keenan in particular." Bloom Aff. ¶ 48. Bloom identifies Mr. Salko, "conversations with colleagues," and his "participation in cases" as his source of information for this statement. Bloom Interrogs. Resp. 30, 31(1)(g). The Court will disregard Bloom's testimony in paragraph 48 because it constitutes inadmissible hearsay.

### M. *Paragraph 49*[27]

In this paragraph, Bloom testifies about a sworn statement of Rocco Tisi, a prosecution witness in a case handled by the NYDA's Homicide Bureau. *See* Bloom Aff. ¶ 49. The Court refuses to consider paragraph 49, as it constitutes inadmissible hearsay.[28]

### N. *Paragraph 64*

In paragraph 64 of his affidavit, Bloom states: "To my knowledge, there was never any effective training program which taught and/or encouraged honest and ethical behavior in [the NYPD or NYDA]. Even if there had been such a program, it is clear that there was no adequate supervision to

newspaper reports that a certain person, Clarence Lee, had seen the incident, and that he had named the perpetrators when interviewed by the prosecution. Defense counsel demanded that the DA (Assistant DA John Keenan was handling the case at the time) disclose all police and other reports regarding this exculpatory information. The DA refused and a motion was made to compel disclosure." Bloom Aff. ¶ 37.

26. Paragraph 38 of the Bloom Affidavit reads: "At a hearing, Keenan took the position that, in effect, all the cases decided by the United States Supreme Court and the New York State Court of Appeals which require disclosure of exculpatory information did not apply to Keenan if Keenan did not personally believe that the exculpatory information was true. He further asserted that police reports were beyond the scope of the *Brady* doctrine. The Court (Justice Burton Roberts) rejected Keenan's absurd claims and directed disclosure. (*People v. Bottom*, 76 Misc.2d 525, 351 N.Y.S.2d 328 [NY County, 1974]). It was clear that Keenan simply grasped at these ludicrous arguments to justify his unethical failure to comply with basic legal principles." Bloom Aff. ¶ 38.

27. Paragraph 49 of the Bloom Affidavit provides: "Mr. Salko sua sponte provided me with a copy of a sworn statement by a man named Rocco Tisi which had been executed in October of 1972. In the statement, Mr. Tisi, who was a prosecution witness in a case handled by the NYDA's homicide bureau, set forth his account of his dealings with then Assistant DA Vincent Dermody and then Assistant DA John Keenan. The statement (attached hereto as Exhibit 1) makes clear that Mr. Tisi was given help by the prosecution with his liquor license and that the DA's representatives, *specifically John Keenan, attempted to get Tisi to swear that the DA's office had not helped him with his license.* (See exhibit 1, page 17ff). Despite Keenan's subornation of perjury, Tisi refused to lie." Bloom Aff. ¶ 49.

28. Attached to the Bloom Affidavit is the sworn statement of Rocco Tisi. The Court will consider the Tisi statement only to the extent that it constitutes admissible evidence based on personal knowledge.

insure that the individual officers and/or prosecutors complied with their obligation under the law. And certainly, there was no disciplinary structure that in any way affected the behavior of these habitually unethical and dishonest law enforcement officials." Bloom Aff. ¶ 64. Bloom states no basis for his personal knowledge of the NYPD and the NYDA's training, supervision, and disciplinary practices. Accordingly, the Court strikes paragraph 64 of the Bloom Affidavit.

### CONCLUSION

Defendants' Rule 56(e) motion is hereby granted in part and denied in part. Specifically, the Court strikes paragraphs 8–16, 18–33, 35–36, 39–44, 46–50, and 62–64 of the Bloom Affidavit. The Court also strikes paragraphs 12, 17, 34, 37, and 38 of the Bloom Affidavit except for the following passages:

"For example, in *People v. Cherry,* an unreported case prosecuted in Criminal Court, New York County, the officer who was given credit for the arrest of my client claimed in a sworn affidavit that he had arrested my client at 9 PM on a particular date at 125th Street in Manhattan. That same officer submitted a separate sworn affidavit in which he claimed that he had arrested a different man at that very same time and date at 151st Street. The [ ] information (that the officer had not in fact arrested my client at all, but was 'given' the arrest by other officers) was never disclosed to the defense." Bloom Aff. ¶ 12;

"[In *People v. Robinson,* prosecuted in 1983,] [t]he prosecutor claimed that the investigating NYPD officers never provided exculpatory information to him." Bloom Aff. ¶ 17;

"In *People v. Bottom, et al.,* prosecuted personally by Assistant DAs John Keenan, Roderick Lankler and, at trial, Robert Tannenbaum.... That case involved the May 21, 1971, murder of police officers Piagentini and Jones. It was investigated and prosecuted by the same assistant district attorneys who prosecuted Mr. Bin Wahad for the May 19, 1971 shooting of officers Curry and Binetti." Bloom Aff. ¶ 34;

"Defense counsel demanded that the DA (Assistant DA John Keenan was handling the case at that time) disclose all police and other reports regarding this ... information. The DA refused and a motion was made to compel disclosure." Bloom Aff. ¶ 37; and

"At a hearing, Keenan took the position that, in effect, all the cases decided by the United States Supreme Court and the New York State Court of Appeals which require disclosure of exculpatory information did not apply to Keenan if Keenan did not personally believe that the exculpatory information was true. He further asserted that police reports were beyond the scope of the *Brady* doctrine." Bloom Aff. ¶ 38.

It is So Ordered.